ARTURO CASTRO LUND y su esposa AIDA FRANCESCHI ANTONGIORGI, demandantes y apelados, *v.* FÉLIX GONZÁLEZ RIVERA y U. S. FIDELITY & GUARANTY Co., demandados y apelantes.

Núm. 8178.—*Sometido:* Febrero 12, 1941. *Resuelto:* Marzo 28, 1941.

370

*Rosa Luz Silva, Federico Tilén, Leopoldo Tormes García* y *J. Alemañy Sosa,* abogados de los apelantes; *Agustín E. Font,* abogado de los apelados.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Instituyóse este pleito a tenor de las disposiciones del artículo 60 del Código de Enjuiciamiento Civil en relación con los 1802 y 1803 del Código Civil (edición de 1930), en reclamación de los daños y perjuicios que alegan haber sufrido los demandantes con motivo de la muerte de su legítima hija de ocho años de edad Vilma Castro Franceschi, acaecida en Ponce el 4 de junio de 1938 al ser arrollada por el automóvil guagua P914, que forma parte de la empresa de transporte de pasajeros de que es dueño el demandado Félix González Rivera, asegurado por su codemandada U. S. Fidelity & Guaranty Co.

La demanda original fué establecida a nombre de Arturo Castro, padre de la niña, exponiendo dos causas de acción: una, contra el dueño de la empresa, y la otra, contra la compañía aseguradora. La primera tendía a establecer la responsabilidad del demandado F. González Rivera como dueño de la empresa, alegaba que la causa del accidente había sido la negligencia de Carlos Vázquez, conductor del vehículo, especificando los actos que la constituyeron, y terminaba alegando que la muerte de su citada hija le causó sufrimientos mentales y morales extraordinarios, y gastos, que calcula en la suma de $25,000. La segunda, reproducía las alegaciones de la primera, hacía referencia al contrato de seguro existente entre los codemandados, y terminaba con súplica de una sentencia contra la compañía por la suma indicada, para el caso de no poder hacerse efectiva la que pudiera dictarse contra su codemandado.

Declarada con lugar en parte la moción interesando eliminaciones y especificaciones que radicaron los demandados, se concedió a los demandantes un plazo de diez días para la presentación de una demanda enmendada y especificación de los particulares solicitados.

Enmendóse la demanda, pero al así hacerse fué unida como demandante la madre de la niña, Aida Franceschi Antongiorgi; se expuso una sola causa de acción contra los demandados, y como en la demanda original, se pidió sentencia por $25,000, suma que se compone de las siguientes partidas: gastos de funerales, $350; importe de un panteón o mausoleo erigido en el cementerio católico de Ponce, dedicado a la niña, $2,000; tratamiento médico de la codemandante motivado por los efectos que en su salud produjera la trágica muerte de su hija, $250; sufrimientos morales del codemandante, $11,200, e igual suma por los de su esposa demandante.

Solicitaron los demandados la eliminación de toda la demanda enmendada, y separadamente y sólo para el caso de no prosperar la primera, en una segunda moción solicitaron se eliminasen ciertas alegaciones de dicha demanda y

que se le suministraran las especificaciones que según ellos eran necesarias para preparar la contestación.

Denegadas ambas mociones y luego de consignar en autos la consiguiente excepción, contestaron los demandados. Admitieron que sucedió el accidente, pero negaron que su causa próxima fuese la culpa o negligencia del conductor del vehículo, alegando en contrario que fué motivado por la negligencia contribuyente de la niña al cruzar la calle en la forma en que lo hizo y por la de sus padres, al permitirle, no obstante su tierna edad y lo avanzado de la hora de la noche, caminar sola por las calles de la ciudad de Ponce. Negando siempre la negligencia del conductor, alegó el demandado González Rivera que ejercitó toda la diligencia y cuidado de un buen padre de familia al emplear a dicho conductor, especificando detalles de la investigación realizada por él antes de emplearlo y sus observaciones posteriores, alegando además dicho demandado que siempre ha mantenido todas las guaguas de su empresa en perfecto estado de conservación y debidamente equipadas, de suerte que puedan manejarse sin riesgo o peligro alguno proveniente de cualquier defecto, insuficiencia o estado de abandono de dichos vehículos.

La demandada aseguradora alegó por su parte que los términos de la póliza limitan su responsabilidad en casos de muerte por culpa o negligencia imputable al asegurado, a una suma que no excederá de $3,000.

Tras la práctica de una prueba larga y laboriosa que se extendió por varios días, se dictó sentencia en los siguientes términos: se condenó al demandado Félix González Rivera a pagar a los demandantes en concepto de indemnización de daños y perjuicios, la cantidad total de $12,000, en la proporción de $6,000 para cada uno de los esposos demandantes; la demandada U. S. Fidelity & Guaranty Co., considerando los términos de la póliza, fué condenada a pagar la cantidad de $3,000 "como parte de dicha suma de $12,000," imponiéndose además a los demandados, mancomunada y solidaria-

mente, el pago de las costas y de la cantidad de $500 por concepto de honorarios de abogado.

Apelaron los demandados y en su alegato señalan 24 errores, muchos de los cuales se relacionan con las alegaciones y otros con la apreciación de la prueba. Para facilitar su discusión, así como para puntualizar las cuestiones en controversia, hemos hecho una breve exposición de los procedimientos anteriores al juicio y con igual objeto procederemos ahora al estudio de la prueba.

La evidencia es contradictoria en los detalles esenciales que pueden determinar la responsabilidad de los demandados. La de los demandantes tiende a probar que como a las 10:30 de la noche, la interfecta, su padre, y otro niño sobrino de éste, salían del cine y se dirigían a la residencia del Sr. Castro. Que la niña quiso que su padre le comprase dulces y al rehusar complacerla, se enojó y no quiso caminar de la mano de aquél, quedándose detrás de ellos. Que la niña caminaba por la acera de la calle Salud, frente al Liceo, y que al llegar junto a una boca de incendio que allí existe, cruzó la calle corriendo, siendo alcanzada y arrollada por la guagua cuando sólo le faltaban tres o cuatro pies para ganar la acera opuesta. Hasta aquí no existe conflicto alguno en la evidencia. Discrepan demandantes y demandados en que la prueba de los primeros asegura que la guagua, en los momentos del accidente, marchaba a una velocidad excesiva, sin tocar aparato de alarma, no prestando el chófer la debida atención y cuidado, puesto que en los precisos momentos del accidente venía entretenido en una conversación con los pasajeros, que dió motivo a que volviera su cara a la derecha para prestarles atención, y que fué ésa la causa por la cual no advirtió la presencia de la niña hasta después de haber sido arrollada por el vehículo.

La de los demandados tiende a negar la negligencia del chófer. Sostienen algunos de sus testigos que la niña venía corriendo por la acera indicada, y súbitamente, al llegar a la boca de incendio, se lanzó a la calle corriendo velozmente,

con la cabeza baja, hasta enfrentarse al vehículo, de tal manera que fué imposible evitar el accidente a pesar de las diligencias practicadas por el chófer. Asegura este último que él vió que se aproximaba a la guagua por el costado izquierdo un celaje que se movía rápidamente, y que aunque al advertirlo aplicó los frenos de emergencia y de pie, no fué posible detener el vehículo hasta después de haber arrollado lo que luego resultó ser la niña de los demandantes. Aseguran el chófer y algunos testigos de los demandados que el vehículo marchaba como a 10 kilómetros por hora y que al aproximarse a la esquina de la calle Cristina redujo a 8 kilómetros y tocó *klaxon* fuertemente; que no es cierto que él viniese conversando con los pasajeros, y que venía mirando hacia adelante.

Además de los testigos oculares, declaró el Jefe de la Policía Rafael Molina que la misma noche que ocurrió el accidente se dirigió al sitio del suceso en compañía del Fiscal Sr. Rodríguez Serra y del Cabo Rafael Torres, e hicieron ciertas observaciones, entre ellas que existían en el pavimento ciertas manchas de sangre, quedando la última de ellas a unos seis u ocho pies de la primera, y que entre ésta y el sitio en que paró la guagua—lo que pudieron determinar por la huella dejada en el pavimento—, había una distancia de 27½ pies. Se practicó también una inspección ocular que permitió a la corte ver los sitios y constatar las distancias a que en el curso de sus declaraciones se refirieron los testigos.

En su alegato los apelantes señalan veinticuatro errores, muchos de los cuales aparecen repetidos. De considerar cada uno de ellos separadamente, incurriríamos en inútiles repeticiones y extenderíamos innecesariamente esta opinión. Por consiguiente, en una discusión general procuraremos abarcar todas las cuestiones planteadas por los apelantes.

■ Como hemos visto al reseñar las alegaciones, en la demanda original de este caso aparecía como único demandante el Sr. Castro, padre de la menor interfecta. Al decla-

rarse con lugar la moción eliminatoria y sobre especificaciones radicada por los demandados, la corte concedió al demandante un plazo de diez días para enmendar su demanda. La demanda enmendada no alteró el montante de la suma reclamada por concepto de daños y perjuicios, pero incluyó como parte demandante a la madre de la interfecta. Sostienen los apelantes que no podía presentarse esta demanda enmendada sin previo permiso de la corte. Parecen olvidar que se había concedido a la parte demandante un plazo de diez días para radicar una demanda enmendada y que si bien como cuestión de hecho se agregó una parte que no aparecía como demandante en la demanda original, como cuestión de derecho la situación legal permaneció inalterada, pues el artículo 60 del Código de Enjuiciamiento Civil expresamente autoriza al padre y a la madre, solos o conjuntamente, a establecer acciones de esta índole, y prescribe además que la madre natural o legítima será siempre partícipe en la acción, en proporción igual al padre legítimo o natural reconocido. Por lo tanto, no erró la corte inferior al negarse a eliminar la demanda enmendada.

██ En dicha demanda enmendada no se especifica el sitio preciso donde ocurrió el accidente, y se reclaman, entre otras, dos partidas de daños: una por $2,000, importe del mausoleo a que hemos hecho referencia, y otra por $250, gastados en asistencia médica prestada a la Sra. Franceschi. No tenemos duda de que debió especificarse el sitio donde ocurrió el accidente, sobre todo cuando lo pidieron los demandados, pero por el resultado de sus alegaciones y de la prueba por ellos presentada, fácilmente se comprende que ningún perjuicio se les causó al negarse la corte a conceder la especificación solicitada. Lo mismo puede decirse respecto a la negativa de eliminar la partida de $2,000 antes mencionada, pues la corte sentenciadora, al resolver finalmente el caso, descartó esta partida por no ser recobrable. Siendo ello así, es de aplicación el artículo 142 del Código de Enjuiciamiento Civil, preceptivo de que en cualquier estado del pleito la corte

no debe considerar o tomar en cuenta ningún error que no afecte los derechos sustanciales de las partes y que no se revocará o invalidará ningún fallo por razón de dicho error o defecto.

Asumiendo que la partida de $250 reclamada por honorarios médicos por los servicios prestados con motivo de la enfermedad de la madre de la menor, causada por la muerte de su hija, no fuera recobrable, el error, de haber existido, al permitir que la alegación de esa partida permaneciese en la demanda enmendada, no causa la revocación de la sentencia, toda vez que se reclaman otras partidas de daños, y a lo sumo la cuestión se reduciría a no considerarla al fijar el montante de los daños que en definitiva deberán concederse a los demandantes.

▆▆▆ Se quejan los apelantes y señalan como error de la corte el haberse usado la investigación practicada por el fiscal en el caso criminal seguido contra el chófer Vázquez, para impugnar testigos de los demandados, alegando que las investigaciones fiscales son de carácter privado y que en todo caso dichas declaraciones no aparecen firmadas por ellos ni resulta de la declaración del taquígrafo del fiscal que fueran leídas a los testigos.

Es cierto que la investigación practicada por el fiscal es de carácter privado y que generalmente no puede obligársele a mostrarla, pero ése es un privilegio del fiscal al cual puede renunciar; y si como en este caso él voluntariamente pone la investigación a la disposición de las partes, depositándola con el secretario de la corte para que pueda utilizarse en el juicio, no hay razón legal alguna que impida su uso por cualquiera de las partes. No es indispensable para la validez de tales declaraciones que el taquígrafo del fiscal las lea al testigo tan pronto termina de declarar, ni tampoco es necesario transcribir las notas taquigráficas inmediatamente, para que el testigo pueda firmar su declaración, pues el taquígrafo del fiscal es un empleado público y se presume, de acuerdo con el artículo 102 de la Ley de Evidencia (art. 464, Cód.

Enj. Civ., ed. 1933), que los deberes de un cargo han sido cumplidos con regularidad. Por consiguiente, no erró la corte inferior al permitir el uso de esas declaraciones y que se presentasen en evidencia para impugnar la declaración de Genaro Toro Rodríguez, ya que este testigo, en el acto del juicio, declaró con lujo de detalles la manera en que ocurrió el accidente, mientras que en la investigación practicada por el fiscal la misma noche del suceso, el mismo testigo manifestó: "Yo, con la misma nerviosidad, no me dí cuenta de nada. La guagua ya había pasado de la Cristina, cuando la niña va corriendo; fué todo lo que yo pude ver."

El testigo de los demandados Joaquín Maldonado, en el acto del juicio declaró que el chófer tocó bocina, y en la investigación practicada por el fiscal se le preguntó: "¿Allí no se tocó klaxon ni bocina al llegar a la esquina?", contestando: "No oí". Habiéndose sentado las bases para la impugnación de este testigo, no erró la corte al admitir en evidencia la declaración prestada ante el fiscal.

Para evitar que se dé a esta opinión un alcance que no tiene, queremos consignar que al decir nosotros que las declaraciones tomadas por el fiscal a que nos hemos referido son admisibles en evidencia, debe entenderse que lo son única y exclusivamente para demostrar que el testigo ha hecho en ocasión anterior manifestaciones inconsistentes con las que hizo en el juicio; pero que tales declaraciones no son admisibles para probar en el juicio que se celebra lo que en ellas expresó el testigo, entre otros por el fundamento de que se privaría a la parte perjudicada por tal declaración del derecho de repreguntar.

■ José Manuel Laboy, también testigo de los demandados, describió detalladamente el accidente y en el curso de su declaración, repreguntado por el abogado de los demandantes, declaró que ese día no había trabajado en la Central Merceditas donde regularmente trabaja durante la zafra, en los tachos, porque para esa fecha se hallaban en el invernazo y no había trabajo en la Central. Para impugnar su

declaración admitió la corte la del testigo Pedro Jerónimo Goyco, listero de la factoría de la Central Merceditas, quien declaró que la factoría estuvo trabajando ese año hasta el 12 de junio y que conforme aparecía del *pay roll* que tenía en sus manos, José Manuel Laboy trabajó el 4 de junio de 1938.

A nuestro juicio no erró la corte al admitir el testimonio de Goyco, pues por lo menos tendía a demostrar la flaqueza de la memoria de Laboy y hasta cierto punto hacía dudar de la declaración en que con tanta exactitud daba los detalles del accidente, ya que resulta raro que recordase esos detalles con tanta certeza y sin embargo no pudiese recordar algo que le atañía personalmente, o sea que había trabajado el día en cuestión.

Mientras declaraba por los demandantes el testigo Federico Tarrats, manifestó que al sentir el chófer el golpe dado a la niña, se volvió hacia los pasajeros y les dijo: ''¿Se han fijado cómo esa chiquita se me metió debajo de la guagua?'' Interrogado por el abogado de los demandantes si dijo algo más, contestó el testigo: ''Que yo recuerde . . . eso es lo que recuerdo.'' Se le preguntó nuevamente: ''¿Dijo si había visto a la niña?'' Se opuso el abogado de los demandados, sosteniendo la corte la oposición, indicando entonces el abogado de los demandantes al testigo que dijera todo lo que dijo el chófer, replicando el testigo: ''Cuando se viró, dijo: '¿Se han fijado cómo esa chiquita se ha metido debajo de la guagua?' Si dijo algo más no me acuerdo de momento.''

Le mostró entonces el abogado de los demandantes la declaración que el testigo había prestado ante el fiscal, de la cual resultaba que contestando una pregunta similar dijo: ''¿Se han fijado cómo esa chiquita se me metió debajo? *No la he visto*, se me metió debajo,'' aceptándola el testigo como correcta.

Es verdad que la Ley de Evidencia sólo permite refrescar la memoria de un testigo mediante la presentación de un memorándum que hubiere sido escrito por él en fecha tan

próxima al acaecimiento de los hechos relatados que éstos estuvieren todavía frescos en su memoria, y en el presente caso la declaración del fiscal no puede considerarse como el memorándum a que se refiere la Ley de Evidencia. Pero dadas las circunstancias del presente caso, no apareciendo claramente que ese error, aunque cometido, haya perjudicado los derechos sustanciales de los demandados, opinamos que no justifica la revocación de la sentencia. Artículo 142 del Código de Enjuiciamiento Civil.

■ También señalan los apelantes como error el que la corte permitiera contestar al testigo de los demandantes Flor Echevarría en su examen directo que él había venido a declarar por haber recibido a ese efecto una carta del abogado de los demandantes, Sr. Font. Tanto la pregunta como la contestación eran claramente inmateriales y por consiguiente el error de la corte al admitirlas, no pudo afectar en manera alguna los derechos sustanciales de los demandados.

■ Tampoco tiene importancia alguna el que se le preguntara al chófer mientras declaraba si se encontraba bajo el peso de una acusación por homicidio involuntario, si se tiene en cuenta que no se trataba de un juicio por jurado, sino ante un juez de larga experiencia que en manera alguna podría ser influído por la pendencia de tal acusación.

■ Alegan los apelantes que erró la corte al admitir evidencia sobre la solvencia económica e ingresos de la parte demandante. La justificación de esta prueba la encontraremos inmediatamente al considerar que una de las partidas reclamadas es la cantidad de $350 gastada por los demandantes en el entierro de su hija. Para juzgar sobre la razonabilidad de este gasto, precisaba tener en cuenta la posición social y económica de los padres de la niña, pues lo que podría ser un gasto razonable en una persona de los medios económicos de los demandantes, podría considerarse exagerado en una persona de escasos medios económicos.

El perito de los demandados, Sr. Mayoral, declaró que una guagua como la de los demandados, que venía a la velocidad que declararon sus testigos, o sea como a 8 kilómetros por hora, y llevaba quince o veinte pasajeros, podía parar a 8 ó 10 pies más o menos del sitio en que se aplican los frenos, y el juez en su opinión dijo:

"De cualquier manera, es un hecho probado que desde el sitio de la primera mancha de sangre hasta donde paró la guagua, había una distancia *tres veces mayor* a la de 8 pies que señaló en su declaración el perito de la demandada Carmelo Mayoral."

No podemos convenir con los apelantes en que la corte inferior errara "en la apreciación y efecto" de la referida declaración del perito al hacer tal manifestación.

Es cierto que el demandado González presentó evidencia no controvertida por los demandantes tendente a sostener la defensa de que ejercitó todo el cuidado de un buen padre de familia al seleccionar al chófer Vázquez y al mantener las guaguas en buen estado de funcionamiento. Admitimos que el último párrafo del artículo 1803 del Código Civil (ed. 1930) dispone que la responsabilidad de que trata dicho artículo "cesará cuando las personas en él mencionadas prueben que emplearon toda la diligencia de un buen padre de familia para prevenir el daño"; pero como se dijo por este tribunal en el caso de *Maldonado* v. *The P. R. Drug Co.,* 31 D.P.R. 747, 764, si se diese a ese precepto la interpretación que pretenden los apelantes, sería muy fácil hacer ilusoria cualquier reclamación establecida al amparo de dicho artículo. No basta probar que se eligieron empleados competentes y cuidadosos; es preciso probar además que se ejercitó el cuidado y diligencia necesarios para evitar el daño. Véanse también *Rodríguez* v. *The National Cash Register Co.,* 35 D.P.R. 663, y autoridades citadas, entre las cuales se halla *Panama Railroad Co.* v. *Toppin,* 252 U.S. 308. Pero en el presente caso, la corte inferior llegó a la conclusión de que la única causa próxima del accidente fué la negligencia

del chófer que conducía la guagua. Siendo ello así, la sentencia apelada no infringe las disposiciones del citado artículo 1803.

A nuestro juicio, no erró la corte sentenciadora en la apreciación de la prueba. Como hemos dicho anteriormente, la evidencia es contradictoria, y aunque el caso está en la línea fronteriza y pudo haberse resuelto en uno u otro sentido—según se diese crédito a la prueba de una u otra parte—, el juez de la corte inferior, que tuvo la oportunidad de ver y oír declarar los testigos, así como la de practicar la inspección ocular a que hemos hecho referencia, llegó a la conclusión que debía dirimir el conflicto de la prueba a favor de los demandantes, y estando él en mejores condiciones que nosotros para apreciarla y no habiéndose demostrado que actuara movido por pasión, prejuicio o parcialidad, no podemos alterar la conclusión a que llegara al efecto de que la causa próxima del accidente fué únicamente la negligencia del chófer Carlos Vázquez.

Se alegó también por los demandados apelantes la defensa de negligencia contribuyente por parte de la niña y de sus padres. Es regla general bien establecida que un niño, por lo menos mientras no haya llegado a la edad más avanzada de la infancia, no está obligado a ejercitar el mismo grado de cuidado exigido de un adulto, y que el criterio para juzgar su conducta en lo que respecta a la defensa de negligencia contribuyente consiste en determinar si ejercitó el cuidado y circunspección que ordinariamente ejercitan otros niños de su misma edad, capacidad, discreción, conocimiento y experiencia dentro de las mismas circunstancias. 107 A.L.R. 7. "Si el cuidado y diligencia exigidos de los niños debe determinarse por su capacidad, discreción, conocimiento y apreciación de la probabilidad y grado de peligro, necesariamente debe existir, por supuesto, una edad en la cual ningún grado de cuidado debe exigirse del niño, es decir, una edad en la cual la doctrina de negligencia contribuyente no es de aplicación. En muchos casos de daños causados a niños

cuyas edades fluctúan desde algunos meses hasta siete años, las cortes han resuelto que como cuestión de derecho no podrá imputárseles negligencia contribuyente, no porque no pueda inferirse negligencia de las circunstancias especiales del caso, sino porque la edad del niño crea una presunción concluyente de ser incapaz de incurrir en negligencia.'' Ob. cit., pág. 71. Esta presunción concluyente, por lo general, no se aplica a niños que han alcanzado la edad de ocho años. Ob. cit., pág. 127.

En el caso de autos, la niña sólo contaba ocho años el día del accidente y asumiendo que hubiera visto la guagua antes de lanzarse a cruzar la calle, bien pudo excusarse su error al calcular que podría pasar sin ser alcanzada por el vehículo, pues indudablemente—si como concluyó la corte, la guagua marchaba a una velocidad excesiva—debió el vehículo hallarse a bastante distancia del sitio en que se hallaba la niña cuando trató ésta de cruzar la calle. Quizá una persona adulta hubiese tenido capacidad suficiente para determinar el tiempo que tardaría en cruzar la calle y el que necesitaría el vehículo para cubrir la distancia que debía recorrer para alcanzarla. Considerada la edad de la menor, no podemos exigirle ese grado de capacidad para calcular correctamente tiempo, distancia y velocidad. No estuvo ella tan desacertada en sus cálculos, cuando a pesar de la excesiva velocidad a que se dice venía la guagua, ésta pudo alcanzarla cuando sólo faltaban 3 ó 4 pies para que la niña llegase a la acera opuesta.

Tampoco podemos convenir con los apelantes en que los padres de la menor fueron culpables de negligencia contribuyente. La menor no se hallaba sola por las calles de Ponce, como alegan los apelantes. Es cierto que no caminaba de la mano de su padre, pero de la prueba resulta que éste, aunque iba delante de ella, estaba pendiente de sus pasos y que momentos antes, al cruzar ella otra calle, le advirtió que tuviera cuidado al pasar. Además, la niña asistía a una escuela precisamente en el sitio del accidente y

muchas veces iba sola. De suerte que el padre, considerada la experiencia de la niña al asistir sola a la escuela y su edad, pudo confiar en su capacidad para caminar por aquel sitio sin necesidad de ser llevada de la mano.

Réstanos ahora considerar la cuantía que por concepto de daños y perjuicios fué concedida a los demandantes, así como el pronunciamiento de honorarios de abogado. Sabemos que ninguna cantidad, por fuerte que sea, es suficiente para compensar a cabalidad por la muerte de un hijo; pero habida cuenta de la práctica seguida en esta jurisdicción y de las circunstancias de este caso, opinamos que una sentencia por $12,000 sobrepasa los límites establecidos. Considerando las circunstancias todas de este caso, somos de opinión que la cantidad de $5,000 es razonable.

No acostumbramos intervenir con la discreción del juez sentenciador en la concesión de honorarios de abogado, a menos que de la prueba y circunstancias del caso resulte que dicho juez se ha excedido en el uso de la discreción que le concede la ley. En el presente caso la prueba, como hemos dicho, fué muy laboriosa y se extendió por varios días. Dada la cuantía envuelta y el montante de la sentencia, entendemos que no abusó de su discreción la corte sentenciadora al conceder a los demandantes la cantidad de $500 por concepto de honorarios de abogado.

*Procede, por lo expuesto, modificar la sentencia apelada, reduciendo el montante de la misma de $12,000 a $5,000, y dictar entonces la que debió haber dictado la corte inferior condenando al demandado Félix González Rivera a pagar a los demandantes, por partes iguales, la cantidad de $5,000, más las costas y $500 para honorarios de abogado, y a su codemandada U. S. Fidelity & Guaranty Co. a pagar solidariamente con dicho demandado, como parte del montante de la referida suma, la cantidad de $3,000, y así modificada, se confirma dicha sentencia.*

El Juez Asociado Sr. Todd, Jr., no intervino.