ERNESTO CARRASQUILLO y su esposa CONCHITA L. DE CARRASQUILLO, demandantes, apelados y apelantes, *v.* AMERICAN MISSIONARY ASSOCIATION, RALPH PANZER y esposos J. BIERLEY, demandados, apelantes y apelados.

Núm. 8608.—*Sometido:* Febrero 18, 1943. *Resuelto:* Mayo 5, 1943.

868

ames R. Beverley, R. Castro Fernández y José López Baralt, abogados de los apelantes-apelados; Virgilio Brunet, abogado de los apelados-apelantes.

El Juez Asociado Señor Travieso emitió la opinión del tribunal.

La asociación demandada tiene establecido desde hace varios años en la ciudad de Humacao un hospital denominado 'Ryder Memorial Hospital'', en el cual se tratan toda clase de enfermedades, se practican operaciones y se atienden casos de alumbramiento.

La demandante Conchita L. de Carrasquillo, encontrándose en estado grávido, ingresó el día 1º de diciembre de 1938 en el hospital de la demandada, después de haber convenido pagar la suma de $40 como compensación por los servicios que la demandada se comprometió a prestarle. La suma convenida fué pagada el día 3 del mismo mes.

En la demanda interpuesta por los esposos Carrasquillo se alega que debido a la impericia, falta de habilidad y negligencia de los demandados Dr. Bierley y su esposa y del Dr. R. Panzer, empleados de la demandada, el niño nacido

de la demandante sufrió el mismo día de su nacimiento gra ves quemaduras producidas por agua caliente, de las cuale se encuentra aun sufriendo fuerte dolores físicos. En l primera causa de acción se reclaman $20,000 por los daño y perjuicios causados al menor, y en la segunda, $10,000 po los sufrimientos físicos y angustias mentales de los padre $500 por gastos en servicios médicos, más las costas y hono rarios de abogado.

Contestaron los demandados negando todos los hecho esenciales de la demanda, y como defensas especiales alega ron:

1. Que la asociación demandada nunca ha tenido por ob jeto o finalidad el lucro ni la ganancia; que sostiene el hos pital en Humacao con fines caritativos y que allí un consi derable número de pacientes insolventes reciben asistencia médica, hospitalización y medicinas gratuitamente; que la personas pudientes pagan una suma convencional y propor cional a sus medios de fortuna; y que los ingresos que tiene el hospital por ese concepto escasamente cubren el 50 por ciento de sus gastos.

2. Que la asociación demandada contrató los servicios de los otros demandados y de sus enfermeras después de una investigación detenida de sus habilidades profesionales, ex periencia y reputación.

3. Que las quemaduras sufridas por el niño fueron debi das a un accidente inevitable, lamentable y desgraciado, sin que mediara negligencia alguna de parte de los doctores y enfermeras.

El presente recurso ha sido interpuesto por los demanda dos contra la sentencia por la cual se les condena al pago de $5,365.50 más las costas y $500 como honorarios de abogado. Alegan que la corte sentenciadora erró al condenar a la de mandada American Missionary Association, haciendo caso omiso de la decisión de esta Corte Suprema en *Candal* v. *Auxilio Mutuo,* 37 D.P.R. 874; al condenar a los otros tres demandados cuando la prueba demostró que ellos no fueron

lpables de negligencia; al conceder a los demandantes in-
mnización por sufrimientos y angustias mentales; al con-
der a los demandantes la suma de $1,500 para someter al
enor a una operación de cirugía plástica; al no admitir en
videncia ni darle valor probatorio a la renuncia expresa del
emandante Ernesto Carrasquillo a ser indemnizado por da-
os y perjuicios; y al condenar a los demandados al pago
e costas y honorarios.

Los demandantes han apelado también, señalando como
nico error de la corte inferior el haber declarado sin lugar
a primera causa de acción, en la cual Carrasquillo y su es-
osa reclamaban la suma de $20,000 como indemnización por
os daños y perjuicios sufridos por el menor.

Los hechos esenciales, extractados de una transcrip-
ión de evidencia que consta de 465 páginas, son en síntesis
omo sigue:

Al nacer el niño, se le colocó en una cuna provisional, en
a que una enfermera del hospital había colocado dos bolsas
le goma con agua caliente, para conservar al recién nacido
n calor. Esa misma enfermera, Petra Díaz, en unión del
doctor Panzer, asistió a la señora Carrasquillo en el alum-
bramiento. El Dr. Panzer tomó al niño en sus brazos, lo
entregó a la enfermera Norberta Rodríguez y ésta lo colocó
en la cuna. El niño permaneció en la cuna de cinco a quince
minutos, hasta que fué llevado al "nursery" para su primer
baño. Y fué allí en ese momento que los empleados del hos-
pital se dieron cuenta de que el niño estaba quemado. Es
un hecho claramente establecido que las quemaduras sufri-
das por el niño fueron producidas por el agua hirviendo o
a punto de hervir colocada dentro de las bolsas de goma.

Convenimos con la corte inferior en que lo ocurrido no
puede ser calificado como un accidente inevitable. El ejer-
cicio de un cuidado razonable por las enfermeras que inter-
vinieron en la preparación de la cuna y por el médico encar-
gado de atender a la parturienta y al recién nacido, para

comprobar si la cuna estaba a la temperatura requerida, h biese seguramente evitado el lamentable accidente.

Consideraremos ahora las cuestiones levantad por los señalamientos de los demandados apelantes.

1. ¿Es la American Missionary Association responsab por los daños y perjuicios causados por la negligencia falta de cuidado de las enfermeras y médicos empleados su hospital en Humacao?

La Asociación demandada sostiene que no lo es y apoyo de su alegada inmunidad cita la decisión de esta Cor Suprema en *Candal* v. *Sociedad Auxilio Mutuo,* supra, en que se sostuvo que los dueños y directores de un hospit privado que ha sido organizado y funciona sin fin pecuniari alguno, no son responsables de los daños causados por la n gligencia en el diagnóstico y tratamiento de un enfermo, po parte de un médico-cirujano que ha sido seleccionado despué de haberse hecho una investigación detenida de su habilida profesional, experiencia y reputación; y que el mero hech de que en un solo caso a un paciente se le cobrara un preci módico por una habitación en un hospital benéfico y un pre cio razonable por ciertas radiografías, no es suficiente par convertir a una institución benéfica en un establecimiento empresa comercial.

En el caso de autos la evidencia demuestra que si bien e cierto que la asociación demandada fué organizada exclusi vamente para fines religiosos y educativos, no es menos ciert que en el "Ryder Memorial Hospital" se cobra a casi todos los pacientes que allí se hospitalizan y que en numerosos ca sos de pacientes pudientes se les ha cobrado casi lo mismo que lo que cobran ordinariamente los demás hospitales y clí nicas de la ciudad de Humacao. Se probó además, que desde el año 1935 la asociación demandada ha venido celebrando contratos con la "Veterans Administration," para la hospita lización y tratamiento médico de los veteranos, mediante el pago de $2 por día, sin incluir las operaciones; y que en el Ryder Hospital se tratan también casos de accidentes cau-

sados por automóviles asegurados, pagando todos los gastos las compañías aseguradoras. En el caso de *Candal* v. *Auxilio Mutuo,* solamente se probó que la demandante había pagado por los servicios que le fueron prestados, pero no hubo ninguna otra prueba demostrativa de que en el Auxilio Mutuo se siguiera, como se sigue en Ryder Hospital, la práctica de cobrar a las personas pudientes que allí acuden. Fué ésa la razón por la que se sostuvo que la prueba no era suficiente para convertir a una institución benéfica en un establecimiento o empresa comercial. El caso de autos es, pues, fácilmente distinguible del de Candal. En éste, la prueba era insuficiente para demostrar que el Auxilio Mutuo se había convertido en una empresa comercial. En el caso de autos, se probó por las declaraciones de ocho o nueve testigos que en el Ryder Hospital se cobraba a los pacientes de acuerdo con los recursos económicos de cada cual y que el demandante pagó $40 por los primeros diez días de hospitalización de su esposa.

Bastaría la distinción que hemos establecido para resolver que la asociación demandada es responsable por la negligencia de sus empleados, por haberse convertido en una empresa comercial desde el momento en que siguió la práctica de cobrar a los pacientes pudientes por servicios prestádosles en su hospital. Empero, el caso de autos envuelve una cuestión fundamental que merece ser considerada y resuelta de una vez, para dejar así sentada definitivamente la regla a seguir en esta jurisdicción.

¿Son responsables las corporaciones o asociaciones benéficas, por los daños y perjuicios causados a una persona extraña, por la negligencia de sus empleados?

Pocas cuestiones han sido tan debatidas y resueltas en formas tan diametralmente opuestas como lo ha sido la que acabamos de plantear. La mayoría de las decisiones rendidas por los tribunales estatales sostiene que las instituciones caritativas son responsables por los daños causados por negligencia de sus empleados a un extraño a la caridad. La

situación en cuanto a la jurisprudencia sobre casos de daños causados a un paciente de la institución, ha sido descrita por el Juez Asociado Sr. Rutledge, de la Corte de Apelaciones de los Estados Unidos para el Distrito de Columbia (ahora Juez Asociado de la Corte Suprema Federal), en su luminosa opinión en el caso de *President and Dir. of Georgetown College* v. *Hughes,* 130 F. (2d) 810, en los siguientes términos:

"Paradojas de principio, asunciones ficticias de hechos y de consecuencias, y resultados confusos caracterizan la disposición judicial de estas reclamaciones. Desde la inmunidad absoluta, a través de variadas pero inconsistentes cualificaciones, hasta la responsabilidad general, ésa es la gama de las decisiones. Los casos están casi repletos de disensos. Las razones son aun más variadas que los resultados. Éstos son signos evidentes de la ley en su flujo. Indican que hubo error desde el principio o que algo se ha tergiversado posteriormente. Demuestran también que la corrección, aun cuando progresa, es todavía incompleta.

"Por otro lado, la opinión de los eruditos fuera de los tribunales es casi uniforme. La opinión general está en favor de la responsabilidad y en contra de la inmunidad. La erudición legal desempeña una importante función no solamente en la investigación y en la enseñanza, si que también como el medio más efectivo para la crítica constructiva del pensamiento y de la acción judicial. Nombres grandes en el Derecho descansan sobre esos cimientos, algunos de ellos tan reverenciados como cualesquiera otros formados al calor de la función judicial misma. . . . Por consiguiente, cuando la opinión entre los eruditos que no son jueces es uniforme o casi uniforme y la de los jueces es altamente confusa, los primeros trazan el camino a la ley del futuro, mientras los últimos señalan ahora en todas las direcciones. Bajo tales circunstancias, la opinión de los eruditos tiene algo más que un efecto persuasivo. Es la guía más segura para aquellas jurisdicciones en donde la cuestión no ha sido nunca resuelta."

La regla general del derecho es la de la responsabilidad de toda persona que cause daño a otra por su negligencia o conducta torticera. La inmunidad es la excepción.

El artículo 1802 del Código Civil establece la acción para recobrar daños y perjuicios causados por la culpa o negli-

gencia de otra persona. Y el artículo 1803 dispone que "los dueños o directores de un establecimiento o empresa" serán responsables "de los perjuicios causados por sus dependientes en el servicio de los ramos en que los tuvieran empleados, o con ocasión de sus funciones."

¿Es el "Ryder Memorial Hospital", de acuerdo con los hechos y circunstancias establecidos por la evidencia, un establecimiento o empresa, y como tal responsable de los daños y perjuicios causados por sus empleados en el ejercicio de sus funciones?

En el caso de *Vélez* v. *Llavina*, 18 D.P.R. 656, se resolvió, copiando del sumario, que:

"Para que un automóvil pueda considerarse como dedicado a una empresa de automóviles es necesario que el dueño del automóvil lo dedique habitualmente al negocio de conducir pasajeros transportando a cualquiera que le pague el precio correspondiente, y el hecho de que el dueño alquile el automóvil de su uso particular a determinados amigos y no a cualquier persona, no lleva como consecuencia que tuviera su automóvil dedicado a la empresa de conducción de pasajeros."

Aplicando la regla de *Vélez* v. *Llavina* al caso de *Candal* v. *Auxilio Mutuo,* esta Corte se vió obligada a resolver que la evidencia de que a un solo paciente se le cobró por una habitación y por unas radiografías, no era suficiente para convertir a una institución benéfica en una empresa comercial.

Aplicada esa misma regla a los hechos probados en el caso de autos, es inevitable la conclusión de que un hospital que se dedica habitualmente a la hospitalización y tratamiento médico de pacientes y que proporciona esos servicios a cualquier paciente que le pague el precio convenido, y que contrata la prestación de servicios, mediante pago, a los veteranos, es y debe ser considerado como una empresa o establecimiento a los efectos de las disposiciones del artículo 1803 del Código Civil. El hecho de que en esa misma institución se presten servicios gratuitos a personas insolventes,

no le quita su carácter de establecimiento o empresa comercial, del mismo modo que una compañía de transportes no pierde su carácter de empresa comercial por el hecho de transportar gratuitamente en sus vehículos a un número determinado de personas.

Resuelto que el "Ryder Memorial Hospital" es un establecimiento o empresa comercial y como tal responsable de los daños y perjuicios causados por la negligencia de sus dependientes o empleados, nos toca ahora considerar si esa responsabilidad existe exclusivamente para con aquellos pacientes pudientes que pagaron el justo y razonable valor de los servicios prestádosles o si es exigible también por los que pagan un precio especial reducido y por los que aceptan y reciben los servicios como un acto de pura y desinteresada caridad.

Dice la Corte de Apelaciones del Distrito de Columbia, por voz del Juez Rutledge, en el caso ya citado:

"Generalmente, la caridad no es defensa contra un acto torcitero. Cuando se ha causado un perjuicio, no basta contestar: 'Él no pagó y no estaba obligado a pagar por el servicio. Yo se lo dí'. El que se hace cargo de ayudar a otro debe hacerlo con el debido cuidado. El Buen Samaritano, lo mismo cuando va montado sobre un asno que cuando viaja en un Cadillac, o cuando recoge a los peatones en un Modelo T, debe guiar con previsión y cautela. Él no queda exonerado porque fué su conductor más bien que él mismo quien incurrió en el descuido. Ni es importante tampoco que el benefactor sea una corporación, si el acto del servicio gratuito es razonablemente incidental al negocio. Las compañías ferroviarias, por medio de sus empleados, tratan. con frecuencia de hacer por el pasajero más de lo que requiere el contrato estricto o su deber como porteadores. Pero si al hacerlo se desvían de la conducta normal deben pagar por su desviación. La caridad y el acto gratuito afectan el motivo, no el deber . . . . La caridad es muy sufrida y es bondad, pero de acuerdo con la ley común no tiene derecho a ser negligente. Cuando lo es, entonces deja de ser bondad y se convierte en un acto torcitero que da un derecho de acción".

※　　※　　※　　※　　※　　※　　※

"Cuando una persona natural se dedica, no simplemente a un acto aislado y sí a una práctica habitual o empresa de caridad, sin incorporarla o vaciarla en el molde de un fideicomiso, esa persona no goza de inmunidad. Posiblemente la mitad de los servicios médicos prestados hoy son prácticas de caridad. Igual sucede con una gran proporción de los servicios legales. Algunos médicos, y tal vez algunos abogados, dedican la mitad o más de sus largas y útiles carreras, a cuidar a los enfermos y necesitados sin remuneración alguna. Muchos más lo hacen habitualmente, pero en menor escala. Sin embargo, a ellos no se les permite ser descuidados, no obstante ser su bondad continua o habitual más bien que casual u ocasional. Tampoco se les permitiría serlo si sus servicios fuesen prestados a través de o asociados con otros. Solamente cuando un individuo convierte su empresa caritativa en una institución formal, mediante la incorporación o posiblemente la creación de un fideicomiso, es que puede conseguir arrojar todo el peso de su negligencia sobre aquellos a quienes causa perjuicios.

"Es una rara distinción, entre una institución caritativa y un individuo caritativo, que exonera a la primera y hace responsable al segundo, por el mismo servicio y por la misma falta, en igualdad de circunstancias. El hospital puede mutilar o matar al paciente indigente, por negligencia, y, sin embargo, al miembro de su cuerpo médico, que opera o asiste sin remuneración alguna, no puede permitírsele un descuido en un momento de cansancio o de prisa. (Citas) La institución es absuelta. El médico paga. Sin embargo, ellos prestan un servicio común, que el hospital no podría prestar sin él. El médico no puede incorporarse. No puede esconderse detrás de un fideicomiso. No puede evadir la regla del *respondeat superior*. Su socio es responsable, si él lo es. Igual sucede con el abogado.

"La base para esa distinción no puede ser la caridad. No puede ser el hábito o la continuidad en la caridad. Si fuese una u otra, los individuos serían exonerados al probarse ese hecho, o las instituciones serían responsables al probarse lo contrario en un caso determinado. . . . . Las instituciones tienen un valor de supervivencia que ningún individuo posee. Ellas vencen vicisitudes que los individuos no pueden resistir. Es probable que las caritativas resisten la muerte con más firmeza que las comerciales. Seguramente ellas no incurren en mayores riesgos. Si la caridad tuviera que eximir a las instituciones o a los individuos, debería eximir a los últimos. Empero, no debería existir distinción alguna. A menos que el motivo deba substituir al deber, ambos deben ser responsables y en igual grado. Las instituciones deben llevar sobre sus hombros las mismas

responsabilidades que llevan todos los ciudadanos. Ellas deben practicar la caridad como la practican los otros. Con la obligación de no causar daño por negligencia.''

Después de una larga e interesante discusión sobre los antecedentes históricos de la doctrina de inmunidad de las instituciones benéficas; sobre el estado de confusión en que se encuentran las decisiones estatales sobre la materia; y sobre las razones en pro y en contra de la inmunidad, continúa la Corte de Apelaciones del Distrito de Columbia diciendo:

"La abolición de la inmunidad en cuanto a los pacientes que pagan está justificada como el penúltimo paso hacia la extinción. La retención en cuanto al paciente insolvente es el menos defendible y el más infortunado de los refinamientos de la distinción. Él, entre todos, es el que menos puede soportar la carga. Más que todos los otros, él no tiene elección. Es él la última persona a quien el donante desearía ver marcharse sin una indemnización . . . . Él debería ser el primero en recibir reparación, no el último ni el menos entre los que han de recibirla. Así despojada de fundamentos, la distinción cae por su peso. . . . . La inmunidad debe desaparecer y el objeto de la caridad debe ser colocado al mismo nivel que todos los demás''.

Tratándose en el caso de autos de un paciente que pagó al hospital la suma que se le exigió, $40 por diez días de hospitalización o sea $4 diarios; y teniendo en cuenta que de la evidencia de la propia demandada aparece que en el ''Ryder Memorial Hospital'' se admiten pacientes pudientes por distintos precios, de acuerdo con la cama y la condición económica del paciente, opinamos que la corte *a quo* no erró al resolver que la Asociación demandada es y debe ser responsable de los daños y perjuicios sufridos por el niño y por sus padres como consecuencia de la negligencia de sus empleados. El que en el ''Ryder Memorial Hospital'' se presten servicios gratuitos a pacientes insolventes, no es una circunstancia que pueda producir el efecto legal de eximir a la demandada de responsabilidad. Véase *Nicholson* v. *Good Samaritan Hospital,* 133 A.L.R. 809.

Si una institución como la demandada, que presta servi-cios indistintamente a pacientes pobres y a pacientes pudientes, es responsable a un paciente que recibe los servicios gratuitamente, es cuestión que no está envuelta en el presente recurso y por consiguiente no estamos obligados a resolverla.

2. La conclusión a que llegó la corte inferior en cuanto a la negligencia del doctor Panzer está sostenida por la evidencia. Siendo él el médico que asistía a la parturienta, tenía la obligación de velar tanto por la salud y seguridad de la madre como por la del nuevo ser nacido de sus entrañas. Éste tenía derecho a esperar que en su primera aparición en el escenario de la vida, no habría de encontrarse con una negligencia tan crasa, como consecuencia de la cual se le ha dejado marcado y desfigurado para el resto de sus días. El parto de la señora Carrasquillo fué enteramente normal. Nada ocurrió allí de carácter tan extraordinario que ocupase la atención del médico que la asistía y que le impidiese cumplir con su obligación de ver si todo había sido preparado debidamente para la recepción y protección del niño que iba a nacer. Una ligera inspección de la cuna colocada al lado de la cama de la madre, hubiese revelado al doctor Panzer el peligro y evitado el daño. Ninguna de las personas allí presentes, todos ellos empleados del hospital, cumplieron con esa obligación tan fácil de cumplir, pues con sólo palpar el sitio donde había de reposar el cuerpo del niño hubieran descubierto la temperatura excesiva de la bolsa de agua. El propio Dr. Mulgrage, testigo y empleado de la demandada, declaró en el acto de la vista que "El deber del médico, en mi opinión, es determinar que la rutina se haya seguido, se haya observado, y también es deber de él estar seguro y vigilar que la enfermera ha cumplido con su deber." No hubo error en la apreciación de la prueba.

De acuerdo con la evidencia, el demandado Dr. Bierley, ocupaba en la fecha del accidente el cargo de director médico interino. El Dr. Panzer trabajaba allí como médico interno, bajo la dirección y supervisión del Dr. Bierley. No

fué el Dr. Bierley y sí el Dr. Mulgrage quien admitió y empleó al Dr. Panzer para trabajar como médico interno en el hospital. El Dr. Bierley, después de cerciorarse por el Dr. Panzer de que el parto no presentaba dificultad alguna, se retiró a cumplir sus otras obligaciones, dejando al Dr. Panzer a cargo de la paciente. Bajo tales circunstancias opinamos que la corte inferior erró al declarar al Dr. Bierley culpable de negligencia. La evidencia no demuestra que el Dr. Bierley dejase de cumplir alguna de sus obligaciones como médico director. Tampoco estuvo justificada la corte inferior al hacer responsable a la Señora Bierley por la negligencia del médico y de la enfermera a cargo de la paciente.

■ 3. ¿Erró la corte inferior al conceder a los esposos demandantes una indemnización por sufrimientos y angustias mentales?

La acción ejercitada por los demandantes en su alegada "segunda causa de acción" es la que concede el artículo 60 del Código de Enjuiciamiento Civil a los padres, para recobrar por daños causados a un hijo menor de edad, o por la muerte de éste, cuando el daño o la muerte se deba al acto ilegal o negligencia de otra persona.

El citado artículo no especifica cuáles son los daños que los padres pueden reclamar por la muerte de un hijo. En *Hance* v. *R. Méndez & Hnos.*, 52 D.P.R. 336, el padre del menor reclamó como compensación por sus sufrimientos morales y pérdidas materiales la suma de diez mil dólares. Esta Corte revocó la sentencia por la que se desestimó la demanda y en su lugar dictó otra "condenando a la demandada a pagar al demandante una indemnización que atendidas todas las circunstancias concurrentes parece justo fijar en $3,000, con más las costas del pleito."

En *Sánchez* v. *Sucesión J. Serrallés*, 53 D.P.R. 80, el padre de la menor reclamó daños y perjuicios por la muerte de su hija, y alegó que el hecho le ocasionó tanto a él como a su esposa sufrimientos morales y trastornos en sus sistemas nerviosos que apreció en $10,000. La corte de distrito con-

denó a los demandados al pago de $3,000, y al ser apelada la sentencia esta Corte Suprema la confirmó.

En *López* v. *American Railroad Co. of P. R.*, 50 D.P.R. 1, 27, Sandalio López reclamó daños y perjuicios con motivo de la muerte de su hijo. La compañía demandada apeló de la sentencia por la que se le condenó al pago de la suma de $1,500, y en apoyo de su recurso alegó que la corte inferior había errado al tomar en consideración, como elementos de daño, las angustias morales y mentales del demandante. Resolvimos, basándonos en las decisiones dictadas en los casos de *Maldonado* v. *Porto Rico Drug Co.*, 31 D.P.R.747 y *Orta* v. *P. R. Railway, Light & Power Co.*, 36 D.P.R. 743, que el sufrimiento moral causado a los padres de un niño muerto a causa de un acto ilícito, puede ser tomado en consideración como un elemento de daño.

En el reciente caso de *Castro* v. *González*, 58 D.P.R. 368, resuelto en marzo de 1941, los padres de la menor terminaban su demanda alegando que la muerte de su hija les causó "sufrimiento mentales y morales extraordinarios", y gastos, que calcularon en la suma de $25,000. Dicha suma se descomponía así: gastos de funerales, $350; costo de un mausoleo, $2,000; tratamiento médico de la Señora Castro, $250; y sufrimientos morales de los padres demandantes, $22,400. Condenado el demandado a pagar una indemnización de $12,000, apeló para ante esta Corte Suprema. Al considerar los errores señalados por el apelante, resolvimos: que no se había cometido el referente a la partida de $2,000 por el costo del mausoleo, por cuanto al resolver finalmente el caso la corte sentenciadora descartó esa partida por no ser recobrable; y que asumiendo que la partida de $250 reclamada por honorarios médicos pagados con motivo de la enfermedad de la madre de la menor, no fuera recobrable, el error, de haber existido "no causa la revocación de la sentencia, toda vez que se reclaman otras partidas de daños, y a lo sumo la cuestión se reduciría a no considerarla al fijar el montante de los daños que en definitiva deberán concederse

a los demandantes''. Eliminadas las partidas del mausoleo y de honorarios médicos, sólo quedaba en pie como daños materiales específicamente alegados, la partida de $350 para gastos de funerales. Esta corte, teniendo en consideración lo preceptuado en el artículo 61 del Código de Enjuiciamiento Civil, al efecto de que ''En toda demanda con arreglo a este artículo y al precedente, se regulará el importe de los daños y perjuicios que fueren justos, vistas todas las circunstancias del caso'', creyó que la suma de $12,000 concedida por la corte inferior era excesiva; y después de considerar la práctica seguida en esta jurisdicción y todas las circunstancias del caso, modificó la sentencia apelada reduciendo la indemnización a la suma de $5,000.

En el caso de autos, los demandantes han alegado y probado que ambos y especialmente la madre del menor sufrieron no solamente angustias mentales si que también intensos dolores físicos; y que la señora Carrasquillo tuvo que ser sometida a tratamiento médito con motivo del estado nervioso en que quedó como consecuencia de ver sufrir a su hijo. Basta contemplar por breves instantes las dos fotografías admitidas en evidencia, tomadas cuando ya el niño tenía tal vez un año de edad y las quemaduras habían cicatrizado, para comprender cuán grande ha debido ser el sufrimiento físico y moral de esos padres al ver al niño en aquel estado tan lastimoso, que el propio padre lo describe en su testimonio diciendo que parecía ''un cerdito asado''.

Considerando todas las circunstancias del caso y lo que hemos de resolver más adelante con respecto a la desestimación de la primera causa de acción, opinamos que la sentencia recurrida debe ser modificada en cuanto a la segunda causa de acción, reduciendo la suma que la Asociación demandada y el demandado Dr. R. Panzer deberán pagar solidariamente a los demandantes, por partes iguales, a $2,000, más $365.50 por honorarios médicos y medicinas para atender a la curación del niño y de la madre demandante, más las costas.

■ 4. Convenimos con los apelantes en que la corte sentenciadora erró al conceder a los padres demandantes la suma de $1,500 para que puedan atender a los gastos de la operación de cirugía plástica a que deberá ser sometido el menor. Ese error, sin embargo no causa la revocación de la sentencia. Bastará para subsanarlo que deduzcamos esa suma, como ya lo hemos hecho, de la indemnización concedida a los padres demandantes por la segunda causa de acción, y que se la adjudiquemos directamente al menor, para su uso y beneficio. Véase: *Clarke* v. *Eighth Ave. R. Co.,* 37 L.R. 1; y *Rockwood* v. *Lansburgh,* 293 P. 792.

■ 5. En el acto de la vista los demandados ofrecieron en evidencia un documento igual a los que de acuerdo con la práctica seguida en el "Ryder Memorial Hospital" firman los pacientes al ingresar en el mismo. Aparece firmado el de diciembre de 1938 por Ernesto Carrasquillo, como esposo de Conchita López de Carrasquillo; y al pie del mismo consta el párrafo siguiente:

"Se le concede permiso al Dr. Panzer para operar y performar (*sic*) cualquier o todos aquellos actos, que puedan en su juicio, ser necesarios para el bienestar de paciente mi esposa. También para relevar al Hospital Ryder Memorial de cualquier responsabilidad que ocurra (*sic*) a partir de esta fecha 12/1/38".

Se opuso la parte demandante a la admisión, alegando que aún cuando la firma es la de Carrasquillo, el documento ha sido alterado y no está en las mismas condiciones en que se encontraba cuando el demandante lo entregó al Hospital; que el documento antes no tenía y ahora sí tiene nombres tachados, y blancos escritos, unos con tinta y otros con lápiz; que Carrasquillo lo firmó en blanco. La corte resolvió no admitir el documento mientras no se demostrase primero quién había tachado palabras y llenado los espacios en blanco, pero haciendo constar que lo admitiría si se demostraba que todo fué hecho a requerimiento del Sr. Carrasquillo. La declaración de Carrasquillo en cuanto a que él firmó el docu-

mento en blanco fué corroborada por la del Director del Hos pital, quien declaró que la costumbre era que los blancos lo llenasen las enfermeras o cualquier empleado. Los deman dados no ofrecieron prueba alguna para demostrar quién ha bía hecho las enmiendas y tachado las palabras. El docu mento aparece en el récord como evidencia ofrecida y no ad mitida.

Las condiciones fijadas por la corte inferior para la ad misión del documento eran a nuestro juicio razonables, y no habiéndolas cumplido la parte que ofreció el mismo en evi dencia, no erró la corte al negarse a admitirlo. Además, aún cuando el documento hubiese sido admitido en evidencia, la estipulación por la cual se releva al hospital de toda respon sabilidad por la negligencia de sus empleados nunca hubier tenido el efecto deseado por la parte demandada, por se dicha estipulación contraria a la moral pública y por consi guiente nula. *Hales* v. *Raines,* 162 Mo. App. 46; *Brother Medical Jurisprudence,* págs. 143–144.

Si algo renunció Carrasquillo fué el derecho de acción que su esposa pudiera tener en el caso de que a ella perso nalmente se le causara algún daño como consecuencia de la negligencia de los médicos y enfermeras del hospital. Él ne podía renunciar el derecho de acción que pudiera tener un niño aún no nacido por los daños que pudieran causársele en el momento de nacer. Esa renuncia, en el caso de que hu biese sido hecha, también sería nula por no haber sido au torizada previamente por la corte de distrito correspondiente

Consideremos ahora la única cuestión levantada en el recurso interpuesto por los demandantes: ¿Erró la corte inferior al desestimar la primera causa de acción?

En la demanda se alega y se admite en la contestación que los demandantes son casados entre sí. El niño nacido durante ese matrimonio era por lo tanto hijo legítimo de los demandantes y como tal bajo la patria potestad del padre

Las leyes vigentes establecen dos clases de acción deriva das de la culpa o negligencia: la provista por los artículos

802 y 1803 del Código Civil en favor de la persona directamente perjudicada por el acto de culpa o negligencia; y a que conceden los artículos 60 y 61 del Código de Enjuiciamiento Civil a los padres del perjudicado.

En la primera causa de acción ejercitada en el presente caso se alegó que debido a la negligencia de los demandados "el referido menor Ernesto Luis Carrasquillo López sufrió, el mismo día de su nacimiento graves quemaduras .... y aún se encuentra dicho menor padeciendo de dichas quemaduras"; y "que el tratamiento al cual continúa siendo sometido el referido menor le produce fuertes dolores físicos, por lo cual los padres del referido menor, aquí demandantes, estiman que dicho menor ha sufrido daños y perjuicios que valoran en la suma de $20,000".

No hay duda alguna que la demanda sería más correcta si se le alegase en ella, en cuanto a la primera causa de acción, que el demandante Ernesto Carrasquillo comparece en su carácter de padre con patria potestad sobre su hijo menor. Empero, es evidente que la acción que se ejercita en la primera causa de acción es la que la ley concede al menor, y que la suma que se reclama no es para los padres, que no tienen derecho alguno a reclamarla para sí, y sí para uso y beneficio exclusivo del menor, como compensación por el daño causádole. La única acción que tienen los padres es la que han ejercitado en la segunda causa de acción. Así lo entendieron los propios demandados cuando alegaron como tercer fundamento de su excepción previa, que existía una indebida acumulación de acciones "por cuanto la primera causa de acción es una entablada *por los daños que se alegan sufrió la menor hija (sic) de los demandantes* y, la segunda, es una por supuestos dolores físicos y angustias mentales que alegan los demandantes han sufrido como padres de la referida menor". (Itálicas nuestras.)

Tomando en consideración las alegaciones y la naturaleza de la primera causa de acción y la prueba practicada,

no puede llegarse a otra conclusión que no sea la de que l padres aquí demandantes ejercitaron la primera causa acción para el exclusivo uso y beneficio del menor. Como dijo en *Bennett* v. *Bennett,* 91 N. W. 409, en donde el tut inició una acción en la que simplemente se limitaba a dec en el título: "Levy Bennett, Guardian of Emery W. Tu tle", sin hacer constar en la demanda que reclamaba con tutor: "Nosotros podemos honradamente interpretar así si alegaciones, a pesar de no haber hecho constar expresamen que demandaba como tutor". Sostener lo contrario ser permitir que un mero tecnicismo nos impidiese hacer just cia substancial. Véanse *Gigante* v. *Alvarez,* 48 D.P.R. 49 y *Sánchez* v. *González,* 55 D.P.R. 346.

El fundamento de la regla que requiere que toda acció debe ser entablada a nombre de la parte realmente inter sada es evitar que la parte demandada pueda ser sometid a futuros litigios por la misma causa de acción. Las alega ciones de la demanda, las conclusiones a que hemos llegad en el curso de esta opinión y las condiciones impuestas a lo demandantes en la sentencia que hemos de dictar constitu yen una completa protección para los demandados.

La corte inferior erró al desestimar la primera causa d acción. Procede por lo tanto que modifiquemos su sentencia declarando con lugar la primera causa de acción a favor de menor, concediendo a éste una indemnización de $3,000 qu los demandados American Missionary Association y Dr. R Panzer deberán pagar solidariamente en la Secretaría de l Corte de Distrito de Humacao, para uso y beneficio exclu sivo del menor, de acuerdo con la ley.

No creemos que debamos intervenir con el uso que de su discreción hizo la corte inferior al condenar a los demanda dos al pago de $500 para honorarios de abogado. Conside rando todas las circunstancias del caso, la suma concedida es razonable.

En cuanto a los demandados Dr. Bierley y su esposa la demanda debe ser desestimada.

*Con las modificaciones que hemos apuntado, la sentencia recurrida debe ser confirmada.*

El Juez Asociado Sr. De Jesús no intervino.

EN RECONSIDERACIÓN

Julio 14, 1943.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

Entre los varios fundamentos alegados por los demandados en apoyo de la moción de reconsideración de la sentencia que dictamos en mayo 5 de 1943, discutiremos solamente el siguiente:

"(b) Porque concede a los demandantes-apelados como padres del menor indemnización por los sufrimientos morales y físicos SUFRIDOS POR ELLOS como consecuencia de ver sufrir a su hijo, sin que exista ley que autorice tal indemnización."

El artículo 60 del Código de Enjuiciamiento Civil, enmendado por la Ley de julio 20 de 1921 (Ley Núm. 77, pág. 703), concede al padre legítimo o natural reconocido y a la madre legítima o natural, el derecho a entablar demanda por daño causado a un hijo menor de edad, o por la muerte de éste, cuando el daño o muerte se deba al acto ilegal o negligencia de otro. Dispone, además, dicho artículo que la acción podrá entablarse contra la persona causante del daño o muerte, y si dicha persona estuviese empleada por otra persona responsable de su conducta, también contra ésta.

Como se ve, la acción que la ley concede a los padres no está limitada a aquellos casos en que el menor ha perdido la vida. Los padres tienen derecho a recobrar daños y perjuicios también en aquellos casos en que el menor ha sufrido un daño en su persona.

En esta jurisdicción se han concedido daños y perjuicios a los padres por sufrimientos mentales y morales extraordinarios sufridos por ellos con motivo de la muerte de un hijo

menor de edad. (*Castro* v. *González,* 58 D.P.R. 368; *Sán-chez* v. *Sucesión Serrallés,* 53 D.P.R. 80 y *Hance* v. *Méndez & Hnos.,* 52 D.P.R. 336). El citado artículo 60 del Código de Enjuiciamiento Civil no especifica cuáles son los daños que un padre puede reclamar por el daño causado a su hijo o por la muerte de éste.

Si los aquí demandantes hubieran tenido derecho a re-clamar daños y perjuicios por sus sufrimientos morales y físicos, en el caso de que el menor hubiese muerto como con-secuencia de las quemaduras de que fué víctima, no vemos razón alguna para que se les niegue el derecho a recobrar una indemnización como la que les hemos concedido por el sufrimiento físico y moral experimentado al ver durante mu-chos días el cuerpo del menor convertido en una llaga y por el constante dolor que han de continuar. sufriendo al contem-plar el cuerpo de su hijo lleno de cicatrices imborrables, mu-tilado y marcado para siempre.

El caso de *Rivera* v. *Reyes,* 31 D.P.R. 440, no es de apli-cación al de autos.

Las demás cuestiones levantadas en la moción de recon sideración han sido ampliamente discutidas en la opinión principal y creemos innecesario repetir aquí las razones en que basamos nuestra decisión.

*La moción debe ser declarada sin lugar.*

El Juez Presidente Sr. Del Toro no intervino.