Dr. Miguel Roses Artáu, Miguel y Elvira Roses Denton, demadantes, apelados y apelantes, *v.* Dr. Mario Juliá García, demandado, apelante y apelado.

Núm. 9397.—*Sometido:* Diciembre 5, 1946. *Resuelto:* Junio 27, 1947.

*Mariano Acosta Velarde* y *Daniel Pellón Lafuente,* abogados del demandado, apelante y apelado; *Félix Ochoteco* y *L. E. Dubón,* abogados de los demandantes, apelados y apelantes.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

La demanda original en este caso fué radicada el 17 de junio de 1939. En la demanda enmendada radicada el 27 de mayo de 1941 se alega, "que los demandantes Miguel y Elvira Roses Denton son, y eran en las fechas que más adelante se mencionan, mayores de edad e hijos legítimos del

otro demandante en la presente Miguel Roses Artáu y de la legítima esposa de éste María Adela (Minnie) Denton, quienes fueron casados hasta el fallecimiento de esta última en la fecha y según se alega más adelante en esta demanda; y que todos dichos demandantes se unen como tales en esta acción por el interés común que tienen en la causa de acción que se ejercita en esta demanda, y en la materia (*subject matter*) de la misma.'' Alegan los demandantes que la Sra. Denton de Roses desde un año más o menos con anterioridad a la fecha de su muerte venía trastornada mentalmente, padeciendo de psicosis involucional, con tendencia especial al suicidio, lo que conocía y sabía el demandado; que con motivo de esa enfermedad y especialmente por la tendencia de la paciente al suicidio, los demandantes decidieron recluirla y hospitalizarla en la ''Clínica del Dr. Juliá'', propiedad del demandado, y así lo hicieron, para que allí fuese vigilada y atendida y tratada en su enfermedad, pagando los demandantes al demandado la compensación convenida por dicha hospitalización y los servicios profesionales de éste; que en junio 19 de 1938, Minnie Denton falleció en la clínica del demandado, mientras estaba recluída, siendo la causa de su muerte que el demandado y el personal a su servicio y bajo su dirección, encargados del cuido y asistencia de dicha paciente, negligentemente dieron lugar a que la misma se escapara de su habitación, subiera a la azotea del edificio y desde allí se lanzara a, y cayera sobre, el terreno o acera que lo circunda, sufriendo golpes y lesiones tan graves que le produjeron la muerte en esa misma fecha; y que como consecuencia de la negligencia del demandado los demandantes quedaron para siempre privados de la compañía y sociedad de la difunta Minnie Denton, han sufrido intensa angustia y torturas mentales y morales y satisficieron todos los gastos de enterramiento y han sufrido otros daños y perjuicios. Por todo lo cual reclaman la suma de $100,000 de indemnización, costas y honorarios de abogado.

Contestó el demandado negando específicamente los hechos esenciales de la demanda. Alegó, como materia nueva, la negligencia contributoria de la Sra. Denton de Roses como causa próxima e inmediata de su muerte; que el demandado empleó toda la diligencia de un buen padre de familia para prevenir la muerte de dicha señora, debiéndose su muerte a un acto desgraciado e inevitable, sin que mediara culpa o negligencia por parte del demandado.

Después de haberse sometido el caso, ocurrió el fallecimiento del Dr. Miguel Roses Artáu y éste fué sustituído por sus hijos codemandantes.

La corte inferior dictó sentencia declarando con lugar la demanda y condenando al demandado a pagar una indemnización de ocho mil dólares ($8,000), más las costas y $500 para honorarios de los abogados de los demandantes. Apeló el demandado.

El recurso del demandado apelante se basa en seis señalamientos de error, los cuales discutiremos en el mismo orden en que han sido formulados.

██ Alega el apelante que la corte inferior erró al permitir a los demandantes durante la vista del caso, con la oposición del demandado, enmendar la demanda, cambiando la causa de acción; y también al dictar sentencia contra el demandado y a favor de los herederos demandantes, por haber prescrito la acción, de acuerdo con los artículos 1803 y 1868 del Código Civil, edición de 1930.

El incidente que ha motivado este señalamiento ocurrió cuando, después de haber examinado los tres primeros testigos, el abogado de los demandantes ofreció en evidencia una certificación de la declaratoria de herederos de la señora Denton de Roses. Se opuso el demandado, por el alegado fundamento de ser la prueba ofrecida inmaterial e impertinente, ya que no hay en la demanda alegación alguna que justifique su admisión. Pidieron los demandantes permiso para enmendar la demanda en el sentido de alegar que los de-

mandantes son los únicos y universales herederos de la finada Se opuso el demandado por el fundamento de que habiendo transcurrido más de un año desde que los agraviados supieron el daño causado, la acción ha prescrito; y, además, por ser la alegación propuesta una causa de acción completamente nueva y distinta a la que se alegó en la demanda original, la cual no se basó en la condición de herederos. Replicaron los demandantes que no se trata de traer al pleito nuevas partes y que lo único que se propone es establecer la circunstancia de que los mismos que iniciaron la acción son los únicos herederos de la finada. La corte inferior permitió la enmienda por entender que no se trata de cambiar la causa de acción; que la acción que se ejercita es la que establece el artículo 61 del Código de Enjuiciamiento Civil en favor de los herederos o representantes legales de una persona mayor de edad cuya muerte ha sido causada por la negligencia de otra; y que el único propósito de la enmienda es conformar la alegación a la jurisprudencia que exige que a manera de conclusión se diga que estos demandantes son los únicos herederos de la causante. La corte ofreció al demandado suspender el caso para que tuviese tiempo para contestar la enmienda. El demandado renunció ese derecho y enmendó su contestación para adicionar la defensa especial de prescripción, por haber transcurrido más de un año desde el fallecimiento de la señora Denton hasta la fecha en que los demandantes, a título de herederos, formularon su reclamación.

No erró, a nuestro juicio, la corte sentenciadora al permitir la enmienda de la demanda para alegar que las mismas personas que iniciaron la acción en su calidad de esposo e hijos de la difunta habían sido declarados únicos y universales herederos de ésta.

A los demandantes Miguel y Elvira Roses Denton, como hijos legítimos, y al Dr. Miguel Roses Artáu, como esposo de la finada, correspondía la sucesión de ésta. Así lo reconoció

la corte de distrito de San Juan al declararles, por resolución dictada en 28 de julio de 1938, únicos y universales herederos de María Adela Denton de Roses. Los demandantes tenían desde el momento en que falleció la causante la condición de herederos universales de la finada y, como tales, tenían derecho a ejercitar la acción que el artículo 61 del Código de Enjuiciamiento Civil concede a los herederos para reclamar daños y perjuicios cuando la muerte del causante fuere ocasionada por el acto ilegal o negligencia de otra persona o de sus empleados. La alegación que se hizo en la demanda enmendada, "que los demandantes Miguel y Elvira Roses Denton son . . . mayores de edad e hijos legítimos del otro demandante en la presente Miguel Roses Artáu y de la legítima esposa de éste María Adela (Minnie) Denton, quienes fueron casados hasta el fallecimiento de esta última . . .; y que todos dichos demandantes se unen como tales en esta acción por el interés común que tienen en la causa de acción que se ejercita en esta demanda y en la materia (subject matter) de la misma," era a nuestro juicio suficiente para informar al demandado que los demandantes basaban su reclamación en su condición de herederos de la señora difunta.

Cuando se celebró la vista del caso, en junio 22 de 1944, ya las Reglas de Enjuiciamiento Civil para las Cortes de Puerto Rico habían empezado a regir desde el día 1 de septiembre de 1943. Y esas reglas son aplicables a los procedimientos subsiguientes en acciones que estuvieren pendientes en esa fecha (Regla 86). La Regla 15, referente a las alegaciones enmendadas y suplementarias, dispone en su apartado (a) que las partes pueden enmendar sus alegaciones con el permiso de la corte y que "se concederá el permiso liberalmente cuando la justicia así lo requiera." La misma Regla 15, en su apartado (b) dispone lo siguiente:

" . . . Si se objetare a la evidencia en el juicio por el fundamento de no estar comprendida en las cuestiones litigiosas suscitadas en las alegaciones, la corte permitirá las enmiendas y lo hará liberalmente siempre que con ello se facilite la presentación del caso en sus mé-

ritos y la parte que se oponga no demuestre a satisfacción de la corte que la admisión de tal evidencia le perjudicaría en el mantenimiento de su acción o defensa en los méritos. La corte puede conceder una suspensión para permitir a la parte objetante controvertir dicha evidencia.''

En *Sánchez* v. *Cooperativa Azucarera*, 66 D.P.R. 346, 350, al enmendar la demanda se alegó una causa de acción distinta a la alegada en la demanda original. En ésta se expuso una causa de acción predicada en un contrato de transacción; y en la demanda enmendada se alegó una causa de acción por daños y perjuicios por negligencia. Allí como aquí se alegó por la parte demandada que la acción que se ejercitaba en la demanda enmendada estaba prescrita por haber transcurrido más de un año desde la fecha del incendio que ocasionó los daños reclamados. Al resolver que la acción no estaba prescrita, dijimos:

"Bajo las disposiciones del Código de Enjuiciamiento Civil, los efectos de la demanda enmendada bajo las circunstancias del presente caso, no se retrotraían a la fecha de la demanda original. Pero bajo las Reglas de Enjuiciamiento Civil vigentes cuando se inició este pleito, la regla es diferente. A este efecto prescribe la Regla 15(c):

" 'Efecto Retroactivo de las Enmiendas.—Siempre que la reclamación o defensa expuesta en la alegación enmendada surgiere de la conducta, transacción o evento expuesto o que se hubiere intentado exponer en la alegación original, las enmiendas se retrotraerán a la fecha de la alegación original.'

"Bajo la Regla transcrita el criterio para determinar si una alegación enmendada se retrotrae o no a la fecha de la alegación original, no es el de si la alegación enmendada expone una causa de acción distinta de la que aparecía en la alegación original. El criterio aplicable es si la alegación enmendada surge de la conducta, transacción o evento que se expuso o intentó exponer en la alegación original, no importando que la reclamación contenida en la alegación enmendada se haga bajo una teoría de derecho distinta de aquélla bajo la cual se hizo la reclamación en la demanda original. Moore, *Federal Practice*, Vol. 1, sección 15.08, pág. 810; *Commentary Relation Back of Amendments to Pleadings After Statute of Limitations Has Run*, 2 *Fed. Rules Serv.* 15 c. 1.

"En el presente caso surge de la demanda original y de la enmendada que la conducta, evento o transacción que sirvió de base a las acciones alegadas en una y otra demanda, fué el incendio en la plantación de caña de la demandante causado por una chispa de fuego escapada de la chimenea de la locomotora de la demandada. En tales circunstancias, los efectos de la demanda enmendada se retrotraen a la fecha de la demanda original y como ésta se radicó dentro del año de prescripción, preciso es concluir que la acción no estaba prescrita al radicarse la demanda enmendada."

En el caso de autos, el evento o transacción que sirvió de base a la demanda enmendada de 27 de mayo de 1941 y a la demanda enmendada en el acto de la vista es el mismo—la muerte de la esposa y madre de los demandantes, causada por la alegada negligencia del demandado. Las partes demandantes son las mismas. La corte inferior no erró al permitir que la demanda fuese enmendada. Los efectos de la enmienda deben, de acuerdo con la Regla 15(c), retrotraerse a la fecha de radicación. de la demanda original. Y habiendo sido ésta radicada dentro del año siguiente a la fecha del accidente, no erró el tribunal inferior al resolver que la acción no estaba prescrita.

En el segundo señalamiento se alega que la corte inferior erró al dictar sentencia en contra del demandado, "por cuanto de las alegaciones y de la prueba surge que la causa de acción que se ejercita fué originada en un contrato, no existiendo acción de daños y perjuicios por la muerte de una persona en la violación de un contrato."

El demandado apelante ha hecho un gran acopio de decisiones de los diversos estados americanos en las cuales se discute la diferencia entre las obligaciones y las causas de acción que nacen de los contratos y aquéllas que se derivan de actos u omisiones en que intervenga culpa o negligencia. No vamos a hacer un minucioso examen de las decisiones citadas, pues es bien conocida la diferencia que el derecho clásico establecía entre las acciones "ex contractu" y las "ex delicto".

Las Reglas de Enjuiciamiento Civil que comenzaron a regir el 1 de septiembre de 1943, las cuales, repetimos, son aplicables a "todos los procedimientos subsiguientes en acciones que estuvieren entonces pendientes," han cambiado por completo el procedimiento, haciendo inaplicables las decisiones citadas por el demandado apelante. La Regla 81, inciso (b) dispone:

"*Denominación o Súplica Erróneas.*—Cualquier defecto en la denominación de la acción ejercitada o en la súplica del remedio solicitado, no será óbice para que la corte, descartando el error así cometido, conceda el remedio que proceda de acuerdo con las alegaciones y la prueba."

La acción ejercitada en este caso fué denominada acción civil de daños y perjuicios. Las alegaciones de la demanda demuestran que los daños y perjuicios que se reclaman son los que los demandantes alegan haber sufrido como consecuencia de la muerte de la señora Denton de Roses, causada por la negligencia del demandado. Es cierto que en la demanda se alega que los demandantes pagaban al demandado por la hospitalización y cuidado de la paciente. Pero esa alegación, hecha evidentemente con el único propósito de establecer el hecho de que la paciente se encontraba legalmente en la clínica del demandado, no convierte la acción que se ejercita en una acción *ex contractu,* ni puede ser óbice para que la corte conceda el remedio que proceda de acuerdo con las alegaciones y la prueba.

En el caso de *Carrasquillo* v. *American Missionary Association,* 61 D.P.R. 867, se reclamaron daños y perjuicios por las quemaduras sufridas por un niño recién nacido, causadas por la negligencia y falta de cuidado de una enfermera empleada en el hospital de la demandada. Se alegó como defensa que la asociación demandada nunca había tenido por objeto o finalidad el lucro o la ganancia; que el hospital se sostenía para fines caritativos y que allí un gran número de pacientes eran atendidos gratuitamente; que las personas pudientes pagaban una suma convencional en proporción a

sus medios de fortuna; y que los ingresos por ese concepto escasamente cubrían el cincuenta por ciento de los gastos. La prueba demostró que la madre del niño ingresó en el hospital después de haber convenido pagar la suma de $40, la que pagó dos días después de su ingreso. Se resolvió que un hospital que se dedica habitualmente a la hospitalización y tratamiento médico de pacientes, y proporciona esos servicios a cualquier paciente que le pague el precio convenido y contrata la prestación de servicios, mediante pago, es y debe ser considerado como una empresa o establecimiento a los efectos de las disposiciones del artículo 1803 del Código Civil, aun cuando preste servicios gratuitos a personas insolventes, y como tal, responde de los daños y perjuicios causados a dichos pacientes por la negligencia de sus empleados en el ejercicio de sus funciones.

Como dijimos en el citado caso de *Carrasquillo*, "la regla general del derecho es la de la responsabilidad de toda persona que cause daño a otra por su negligencia o conducta torticera. La inmunidad es la excepción." Véanse *President and Directors of Georgetown College* v. *Hughes*, 130 F.2d 810; *Nicholson* v. *Good Samaritan Hospital*, 133 A.L.R. 809; *Hayhurst* v. *Boy Hospital*, 43 Idaho 661, 254 P. 528; *Tulsa Hospital Ass'n.* v. *Juby*, 63 Okla. 243, 175 P. 519.

La clínica del demandado es un establecimiento dedicado a la hospitalización y tratamiento de personas que sufren de enfermedades nerviosas y mentales, las cuales son admitidas mediante el pago del precio convenido por los servicios. En esas condiciones ingresó allí la señora Denton de Roses. El caso cae, pues, de lleno bajo la doctrina sentada por este Tribunal en el caso de *Carrasquillo* v. *American Missionary Association*, supra. Las autoridades que hemos examinado[1] establecen la regla de que cuando un hospital se dedica al cuidado de pacientes, con fines pecuniarios, su dueño

[1]*Broz* v. *Omaha Maternity and General Hospital Ass'n.*, 96 Neb. 648, 148 N.W. 575; *University of Louisville* v. *Hammock*, 127 Ky. 564, 14 L.R.A. (N.S.) 784.

es responsable de los daños causados a sus pacientes como consecuencia de la negligencia de sus empleados.

■■ El tercero y cuarto señalamientos están relacionados con la apreciación de la prueba. Alega el apelante que la corte inferior erró al sostener que el Dr. Roses Artáu, al exponer el caso de su esposa al Dr. Jiménez, director de la clínica del demandado, le infomó que "los fenómenos nerviosos que había observado en ella le daban a entender que se trataba de una suicida potencial." No hubo error. Del récord del caso aparece (pág. 135, T. de E.) que el Dr. Roses declaró lo siguiente:

"Abogado: Ud. le manifestó eso al Dr. Jiménez, dice Ud., o son cosas . . .

"Testigo: No, yo no sé las palabras con que se lo dije. Yo le dije a él solamente que yo entendía que dentro de los fenómenos que rodeaban a la enferma yo entendía que era una suicida potencial."

Alega el apelante que la conclusión de que la muerte de la paciente se debió a la negligencia del demandado es contraria a la prueba. Hemos examinado cuidadosamente la evidencia aducida por una y otra parte. Es cierto que existen contradicciones. Pero siendo la evidencia de los demandantes, creída por la corte sentenciadora, suficiente para demostrar que la muerte de la señora Denton de Roses no hubiera ocurrido si los empleados del demandado hubiesen ejercido el debido cuidado y diligencia para proteger a la paciente, es nuestro deber respetar las conclusiones de la corte inferior.

■■ Alega el demandado apelante que la suma de $8,000 concedida como indemnización es excesiva y contraria a la evidencia y que la corte inferior erró al condenar al demandado a pagar la suma de $500 por concepto de honorarios de abogado.

La corte sentenciadora no concedió indemnización alguna por los alegados gastos de enterramiento, ni tampoco por concepto de angustias y torturas morales y mentales, por

considerar que ni éstas ni aquéllos habían sido probados. La indemnización fué concedida únicamente por la pérdida de la sociedad y compañía de la finada, expresándose así la corte inferior:

" . . . Los demandantes han sufrido una pérdida pecuniaria, por haber sido privados de la compañía y sociedad de su causante por razón de la muerte de ella, debido a la negligencia del demandado y sus empleados, por cuanto ello significa para el Dr. Roses la destrucción de su hogar con todas las consecuencias que tal suceso acarrea, y para él y sus hijos la pérdida de las atenciones, cuidados y ayuda que recibían de su esposa y madre, respectivamente.

"*          *          *          *          *          *          *

"Al fijar la cuantía, debemos tener en cuenta, a los fines de la mitigación de los daños sufridos, la edad de los demandantes, especialmente la del Dr. Roses Artáu, y de su causante, la enfermedad que padecía, sus posibles probabilidades de vida debido a su enfermedad y el tratamiento intenso a que tenía que estar sometida para obtener su posible curación."

Que la indemnización por la pérdida de la sociedad y compañía de la finada, así como por las angustias y sufrimientos morales y mentales de su esposo e hijos, es procedente, es regla firmemente establecida en esta jurisdicción. *Maldonado v. Porto Rico Drug Co.*, 31 D.P.R. 747; *Orta v. Porto Rico Railway, Light & Power Co.*, 36 D.P.R. 743; *Hance v. R. Méndez & Hnos.*, 52 D.P.R. 336; *Sánchez v. Sucesión J. Serrallés*, 53 D.P.R. 80; *Castro v. González*, 58 D.P.R. 368; *Carrasquillo v. American Missionary Association*, supra.

No creemos que debamos intervenir con la discreción de la corte inferior al conceder a los demandantes la suma de $500 como honorarios de abogado. El demandado negó en absoluto su responsabilidad por la muerte de la señora Denton de Roses, y en tales condiciones se colocó en una situación de temeridad. *Font v. Viking Construction Corporation*, 58 D.P.R. 689, 712; *Reyes v. Aponte*, 60 D.P.R. 890, 900.

*La sentencia recurrida será confirmada.*

Los Jueces Asociados Señores Snyder y Marrero no intervinieron.