Santos Feliciano Cora, demandante, apelado y apelante *v.* Howard H. Sundem y Porto Rican & American Insurance Co., Inc., demandados, apelantes y apelados.

Número 11228.

*Sometido:* 1 de febrero de 1955.  *Resuelto:* 15 de febrero de 1955.

*Córdova & González* y *Alberto Picó,* abogados de los apelantes-apelados; *F. Prieto Azúar,* abogado del apelado-apelante.

Per Curiam: En la noche del 12 de julio de 1949 Santos Feliciano Cora caminaba a pie por la carretera que conduce

de Guaynabo a Santurce y al pasar frente al crematorio municipal fué arrollado por un vehículo de motor. En vista de ello inició contra Howard H. Sundem y la Porto Rican & American Insurance Co., Inc.([1]) demanda de daños y perjuicios. Visto el caso en sus méritos, el tribunal sentenciador declaró la demanda con lugar y condenó a los demandados a pagar al demandante la suma de $7,000, más las costas y $1,000 para honorarios de abogado. En apoyo de su sentencia, se dictó una opinión en la que el tribunal a quo declara probados los siguientes hechos: -

"1.—Entre 7:30 y 8:00 de la noche de julio 12, 1949, el demandante Santos Feliciano Cora, luego de haber practicado gestiones infructuosas por localizar a un cliente cuyo automóvil se proponía reparar, por las inmediaciones de la Vaquería Ojeda de Bayamón, se dispuso a regresar a su residencia de Santurce, pero no hallando un vehículo público en la carretera, comenzó su regreso a pie en la esperanza de que por el camino hallaría dicho vehículo.

"2.—El demandante caminaba en dirección de Santurce, por el lado derecho de la carretera y súbitamente y sin aviso fué arrollado por la parte posterior de su cuerpo por el automóvil licencia 62073, conducido por el demandado Sr. Howard H. Sundem, el cual lo levantó con el impacto y lo lanzó un poco hacia la izquierda a unos 15 pies de distancia.

"3. El automóvil del demandado marchaba a la sazón a velocidad exagerada y su conductor no dió señal de eviso al aproximarse al demandante, ni redujo ni desvió su marcha, a pesar de que el lado izquierdo de su trayectoria se hallaba a la sazón libre de vehículos y de viandantes.

"4.—El demandante quedó inconsciente y sangrando profusamente en la carretera, de donde fué trasladado al Hospital de Distrito de Bayamón en estado de gravedad. El demandante sufrió un estado de 'shock', la fractura del brazo derecho y fué menester que se le amputase la pierna derecha más arriba de la rodilla para salvar su vida, por haber contraído gangrena en dicho miembro. La amputación fué sumamente dolorosa, habiéndose practicado la operación por congelación. El brazo le

([1]) Sundem estaba asegurado con la Porto Rican & American Insurance Co., Inc., por la suma de $10,000.

fué enyesado durante 42 días y el paciente estuvo recluído en el hospital por espacio de 75 días. Sufrió asimismo, una fuerte concusión cerebral, la pérdida del conocimiento duró seis días y. sufrió fiebres y prolongadas noches de insomnio. El demandante es hoy un lisiado permanente y debido a su deplorable estado físico se halla recluído en un asilo de caridad.

"5.—Que el demandante ingresó por primera vez en el Manicomio Insular en abril 27 de 1945 para recibir tratamiento de una psicosis de tipo indeterminado, alcoholismo crónico y embriaguez patológica, siendo dado de baja en septiembre 18 de 1945 porque se le consideraba curado de su psicosis. En septiembre 28 de 1945 volvió a ingresar para ser nuevamente tratado de alcoholismo y embriaguez patológica siendo dado de baja en febrero 19 de 1946. En abril 15 de ese mismo año volvió a ingresar por el mismo motivo y salió de allí en diciembre 31 de 1948. En febrero 17 de 1949 ingresó de nuevo en la institución pero salió el 5 de julio de ese mismo año mediante permiso probatorio de 3 meses porque su conducta ya no se consideraba un riesgo.

"6.—Al tiempo del accidente el demandante era un hombre de 43 años de edad y mientras no estuvo recluído en el Manicomio Insular se dedicaba indistintamente a reparar vehículos de motor y a las faenas de panadero y albañil, sin devengar un jornal diario fijo ni ocupar un empleo estable.

"7.—La corte ha dado entero crédito a la versión de los testigos del demandante y no a la de los demandados. La versión del propio demandado Sr. Howard H. Sundem es inverosímil e irracional al afirmar que el demandante cruzó de izquierda a derecha delante de él sin que pudiese observarlo, pues en tal supuesto el demandante habría cruzado varias trochas de izquierda a derecha y, de conducir su vehículo, como él alega, a velocidad moderada, necesariamente lo habría visto en tiempo para evitar el accidente. La corte trató de obtener del demandado una respuesta categórica sobre la forma y manera en que acaeció el accidente, limitándose a contestar que el demandante 'salió no sabe de dónde.' Sin embargo, él declaró que sus luces delanteras irradiaban a la sazón 75, 100 ó 150 pies hacia delante.

"8.—El tribunal, contrario a la prueba de los demandados, concluye que el demandante se hallaba sobrio al tiempo del accidente, y que no había ingerido alcohol.

"9.—Durante la ocurrencia de los referidos hechos se hallaba en vigor una póliza expedida por la co-demandada Porto Rican & American Insurance Co., Inc., la cual cubría la responsabilidad legal del demandado y asegurado Sr. Howard H. Sundem con respecto a la conducción de su automóvil licencia 62073, respondiendo dicha aseguradora a terceros por los actos negligentes de su asegurado hasta la suma de $10,000 y costas y honorarios de abogado."

En sus conclusiones de derecho dicho tribunal también manifiesta que Sundem fué negligente al conducir su automóvil a velocidad exagerada; al no reducir su marcha al aproximarse al demandante, ni desviar el curso de su vehículo ni dar señal de aviso; y al dejar de ver al demandante en la carretera y dentro del alcance de sus luces delanteras en tiempo para evitar su arrollamiento, siendo su actuación negligente la causa próxima y eficiente del accidente; que el demandante no incurrió en negligencia contribuyente; que no sólo la prueba aducida por el demandante y creída por el tribunal establece que el demandado marchaba al tiempo del accidente a velocidad exagerada e incompatible con la seguridad de los peatones, sino que la violencia del impacto, el hecho de que el demandante fué lanzado a 15 pies aproximadamente del lugar del accidente y el resultado de las graves lesiones físicas recibidas por él, corroboran la conclusión de que la velocidad a que corría el demandado era en verdad exagerada.

De la anterior sentencia apelaron tanto el demandante como el demandado. Consideraremos en primer lugar el recurso de este último. El único error que señala en apelación es que el tribunal inferior erró al resolver que el accidente se debió a la negligencia del demandado Howard H. Sundem y que no medió negligencia alguna del demandante. Hemos leído con detenimiento la transcripción de evidencia que nos ha sido elevada(²) y como resultado de esa

---

(²) Toda vez que tanto el demandante como el demandado apelaron, la transcripción de evidencia que ha sido elevada está en gran parte repetida.

cuidadosa lectura no nos es posible concluir que el tribunal inferior erró al resolver que el accidente se debió única y exclusivamente a la negligencia del demandado. Aunque la prueba del demandante consistió en las declaraciones de varios testigos, solamente dos de ellos ofrecieron prueba directa respecto a cómo ocurrió el accidente. Éstos fueron el propio demandante y Pablo Elmo Hernández. (3) *Santos Feliciano Cora* declaró esencialmente que en la noche de autos se dirigía a pie de Guaynabo a Santurce, por no haber encontrado un vehículo que lo transportara; que caminaba por el extremo derecho de la carretera, por la parte donde termina el embreado; que mientras pasaba frente al crematorio municipal fué arrollado por un automóvil, indicando luego los días que estuvo recluído en el hospital y los sufrimientos que tuvo. *Pablo Elmo Hernández* declaró mediante deposición tomádale en Nueva York, por residir allí para la época en que se celebraba el juicio. Manifiesta en síntesis que vió al demandante caminando por la derecha de la carretera; que Sundem venía a una velocidad exagerada; que al acercarse al demandante, aquél no redujo la velocidad ni desvió su vehículo; que Sundem arrolló al demandante mientras guiaba en la forma indicada; que el automóvil del demandado quedó detenido después de haber ocurrido el accidente y de haber arrollado a Feliciano Cora, a una distancia más o menos de cien pies; que el demandante sangraba profusamente; que él indicó a Sundem que debía llevar al herido al hospital más cercano y éste "se negó a hacerlo porque se le ensuciaba el automóvil con sangre," y que entonces él lo montó en su propio carro y lo llevó al hospital de distrito de Bayamón; que en el sitio del accidente la carretera era bastante ancha y cabían seis automóviles; que Feliciano Cora sangraba y los huesos de las manos y piernas los tenía fuera de la epidermis; que el automóvil del demandado lanzó al demandante hacia el centro

---

(3) Los demás testigos fueron dos médicos, un abogado y un hermano del propio demandante. Sus testimonios no arrojan en verdad luz alguna respecto a la forma en que el accidente ocurrió.

de la carretera; que el demandante recibió el impacto con la parte delantera del automóvil y el bonete de éste quedó hundido; y que él venía en su automóvil como a veinte pies de distancia detrás del vehículo del demandado.

Es innegable que habiendo sido presentado el testimonio de Pablo Elmo Hernández mediante deposición, al aquilatar su credibilidad este Tribunal está en las mismas condiciones que el tribunal sentenciador. Sin embargo, dicho tribunal oyó la totalidad de la prueba testifical y no dió crédito a la de los demandados. Tomada toda la prueba en conjunto y dando crédito—al igual que lo hizo el tribunal a quo—a la deposición de Elmo Hernández, nuestra opinión es que dicho tribunal no erró al concluir que el accidente se debió a la negligencia exclusiva del demandado.

El único error señalado por el demandante se dirige a la cuantía de la indemnización. Considera el demandante que la concedídale debió ser mucho mayor. Conforme concluyó el tribunal a quo, y según se desprende de la prueba que figura en autos, el demandante sufrió un estado de *shock*, la fractura del brazo derecho y la amputación de la pierna derecha más arriba de la rodilla; la amputación fué sumamente dolorosa por habérsele practicado la operación por congelación; tuvo el brazo enyesado durante 42 días y estuvo recluído en el hospital por espacio de 75 días; también sufrió el demandante una fuerte concusión cerebral, perdió el conocimiento por seis días, sufrió fiebres y prolongadas noches de insomnio, y es hoy un lisiado permanente, que está recluído en un asilo de caridad debido a su deplorable estado físico. Asimismo se desprende de los autos que si bien el demandante estuvo recluído en el mánicomio insular en varias ocasiones, para la época en que sufrió el accidente disfrutaba de un permiso dádole por dicha institución por haber mejorado marcadamente de su estado mental; y que era hombre grueso y fuerte y tenía 43 años de edad. Tomando en consideración todo lo anterior, así como el bajo valor adquisitivo del dólar,

creemos que la indemnización a concederse al demandante debe ser aumentada a $12,000. Véanse las opiniones *Per Curiam* en los casos de *Irizarry* v. *El Pueblo*, 75 D.P.R. 786 y *Vargas Nieves* v. *Autoridad de las Fuentes Fluviales*, dictada ésta en 28 de enero de 1954 [no publicada], así como *Batista* v. *Clínica Juliá*, 71 D.P.R. 823; *Roses* v. *Juliá*, 67 D.P.R. 518; *Pepín* v. *Ready-Mix Concrete*, 70 D.P.R. 758.

*La sentencia apelada será modificada en el sentido de aumentar la cuantía de la indemnización por concepto de daños y perjuicios de $7,000 a $12,000, y así modificada dicha sentencia será confirmada.*