EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Yadira Pérez Hernández, Melissa Román Pérez; Suehaze Román Pérez; Robert E. Román Pérez<br><br>Peticionarios<br><br>v.<br><br>Lares Medical Center, Inc; Dra. Fulana de Tal; Aseguradora A, B, C; Hospital John Doe<br><br>Recurridos | Certiorari<br><br>2021 TSPR 123<br><br>207 DPR ____ |

Número del Caso: CC-2018-438

Fecha: 11 de agosto de 2021

Tribunal de Apelaciones:

Panel XI

Abogado de la parte peticionaria:

Lcdo. Richard Schell-Asad

Abogado de la parte recurrida:

Lcdo. José R. Miranda Daleccio

Materia: Daños y Perjuicios-Entre un patrono y su empleado existe una relación de solidaridad propia que se distingue de la solidaridad impropia que de ordinario existe entre los cocausantes de un daño. Por consiguiente, no procede reducir la indemnización imputada a un patrono bajo el Art. 1803 del Código Civil por los actos negligentes de un empleado que no fue traído al pleito.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Yadira Pérez Hernández, Melissa Román Pérez; Suehaze Román Pérez; Robert E. Román Pérez  Peticionarios  v.  Lares Medical Center, Inc.; Dra. Fulana de Tal; Aseguradora A, B, C; Hospital John Doe  Recurridos | CC-2018-0438 | *Certiorari* |

**El Juez Asociado señor RIVERA GARCÍA emitió la Opinión del Tribunal.**

En San Juan, Puerto Rico, a 11 de agosto de 2021.

El presente caso nos permite abundar sobre la doctrina de **solidaridad impropia** adoptada en *Fraguada Bonilla v. Hosp. Aux. Mutuo*, infra, y reiterada en *Maldonado Rivera v. Suárez y otros*, infra, ahora por primera vez en el contexto de una relación obrero-patronal. Específicamente, debemos precisar si la doctrina de solidaridad impropia es aplicable al régimen de responsabilidad presunta por hechos ajenos establecido por los Arts. 1803 y 1804 del Código Civil, *infra*.[1] Así, nos corresponde resolver si procede reducir la indemnización imputada a un patrono por la porción de culpa correspondiente a un empleado que no fue traído al pleito.

Por los fundamentos expuestos a continuación, adelantamos que entre un patrono y su empleado existe una

---

[1] Comúnmente conocido como "responsabilidad vicaria". No obstante, como veremos más adelante, no son lo mismo.

relación de solidaridad **propia** que se distingue de la solidaridad **impropia** ⸺adoptada en *Fraguada Bonilla v. Hosp. Aux. Mutuo*, infra, y reiterada en *Maldonado Rivera v. Suárez y otros*, infra ⸺que de ordinario existe entre los cocausantes de un daño. Por lo tanto, no procede reducir la indemnización imputada a un patrono bajo el Art. 1803 del Código Civil, *infra,* por los actos negligentes de su empleado que no fue traído al pleito. De esta forma, se promueve la función del Art. 1803 para que un demandante agraviado por los actos negligentes de un empleado en el ejercicio de sus funciones pueda cobrar la totalidad de la indemnización del patrono. A su vez, se armoniza con la función del Art. 1804 de permitir que un patrono repita contra el empleado "lo que hubiese satisfecho".

Veamos el trasfondo fáctico y procesal que dio lugar a la presente controversia. Es oportuno puntualizar que los hechos medulares no están en controversia.

## I.

La controversia ante nos se originó como una demanda de daños y perjuicios bajo el Art. 1802 del Código Civil, *infra*, incoada el 5 de noviembre de 2013 en el Tribunal de Primera Instancia (TPI) por la Sra. Yadira Pérez Hernández y sus dos hijos, Melisa Román Pérez, Robert E. Román Pérez (peticionarios), contra Lares Medical Center, Inc.

(recurrida o LMC).[2] En su demanda, los peticionarios reclamaron el resarcimiento de los daños sufridos por la desafortunada muerte del Sr. Roberto Román Camacho (señor Román Camacho) ⸺esposo y padre de los peticionarios⸺ como resultado de la impericia médica cometida por LMC a través de su empleada, la Dra. Santos L. Caraballo Rosario (doctora Caraballo Rosario). Específicamente, adujeron que, en la madrugada del 26 de noviembre de 2012, el señor Román Camacho falleció en su hogar luego de ser atendido y dado de alta, negligentemente, por la doctora Caraballo Rosario en la Sala de Emergencias del recurrido centro de diagnóstico y tratamiento. Dicha intervención médica resultó luego de que el señor Román Camacho manifestara dolores de pecho y una presión arterial elevada. Cabe resaltar que los peticionarios no demandaron a la doctora Caraballo Rosario.

El 3 de febrero de 2014, LMC contestó la demanda.[3] Por su parte, arguyó que no se aducía una reclamación contra ella que ameritara la concesión de un remedio e invocó la defensa afirmativa de prescripción. Razonó que no actuó negligentemente con relación al difunto señor Román Camacho y que tampoco debía responder por los actos de la doctora Caraballo Rosario.

---

[2] *Demanda*, Apéndice de la Petición de *certiorari*, págs. 112-117.
[3] *Contestación a Demanda*, Apéndice de la Petición de *certiorari*, págs. 118-122.

El 4 de noviembre de 2015, y a casi tres años de la muerte del señor Román Camacho, LMC presentó una Demanda Contra Tercero contra la doctora Caraballo Rosario, para ejercer una acción de nivelación contingente.[4] Es precisamente durante esta etapa procesal que el 28 de marzo de 2016 esta Curia emitió su Opinión en el caso de *Maldonado Rivera v. Suárez y otros*, infra. Amparándose en esta jurisprudencia, la doctora Caraballo Rosario presentó una moción solicitando la desestimación de la Demanda de nivelación contingente que entabló su patrono contra ella.[5] Arguyó que cualquier causa de acción de daños y perjuicios en su contra había prescrito, razonando que había pasado más de un año del momento de los hechos sin que dicho término fuera interrumpido, pues no le habían dirigido reclamación alguna. Convencido, el foro primario desestimó la acción en su contra.[6]

Celebrado el juicio en su fondo entre los peticionarios y la recurrida, el 22 de febrero de 2017 **el foro de instancia condenó a LMC a pagar la totalidad de los daños sufridos por los peticionarios.**[7] Así, determinó que los daños sufridos por los peticionarios se debieron a un proceso de diagnóstico insuficiente por parte de la doctora Caraballo Rosario. Además, concluyó, como cuestión de derecho, que **al**

---

[4] *Sentencia*, Apéndice de la Petición de *certiorari*, pág. 193.
[5] *Sentencia*, Apéndice de la Petición de *certiorari*, pág. 194.
[6] *Sentencia*, Apéndice de la petición de *certiorari*, págs. 147-155.
[7] *Sentencia*, Apéndice de la petición de *certiorari*, págs. 54-71.

**momento de los hechos la galena era empleada de LMC, por lo que este último respondía por los daños causados a los peticionarios bajo el Art. 1803 del Código Civil, *infra*.**

Inconforme, el 27 de marzo de 2017, LMC acudió al Tribunal de Apelaciones mediante un recurso de apelación.[8] En este la recurrida le imputó error al foro de instancia al imponerle responsabilidad en ausencia de prueba en su contra. Además, adujo que el foro primario erró al no aplicar *Maldonado*, infra, para descontar de la totalidad de los daños la porción correspondiente a la doctora Caraballo Rosario, por haber prescrito la demanda contra esta.[9]

El 3 de abril de 2018 el Tribunal de Apelaciones emitió una *Sentencia*.[10] Primero, determinó que **no era necesario probar la negligencia de LMC ya que, siendo la doctora Caraballo Rosario su empleada, su culpa como patrono se presume. Al no haberse rebatido dicha presunción, LMC respondía a la parte demandante conforme al Art. 1803 del Código Civil, *infra*.** Sin embargo, **por haber prescrito la acción contra la galena, el foro intermedio ordenó la celebración de una vista ante el foro inferior para determinar el porciento de responsabilidad de la doctora y descontarlo de la totalidad de la compensación otorgada.** Ello basado en *Maldonado*, infra. [11]

---

[8] *Apelación*, Apéndice de la petición de *certiorari*, págs. 26-52.
[9] Íd, en la pág. 33.
[10] *Sentencia*, Apéndice de la petición de *certiorari*, págs. 2-25.
[11] Íd, en la pág. 24-25.

Es precisamente sobre esta última parte del dictamen apelativo que los peticionarios recurren ante nos y mediante el recurso de *autos* solicitan que revisemos y revoquemos parcialmente la sentencia del Tribunal de Apelaciones.

En su escrito, los peticionarios le imputan error al foro intermedio "al resolver que un patrono demandado puede deducir de la compensación otorgada al damnificado el porcentaje de negligencia en que incurrió su empleado".[12] En síntesis, sostuvieron que el Art. 1803 tipifica un régimen especial de responsabilidad **solidaria** entre un patrono y su empleado cual quedaría desvirtuado de prevalecer la interpretación del foro apelativo.[13]

Por su lado, LMC defendió el dictamen recurrido que ordenó la reducción de la totalidad de los daños la porción correspondiente a la doctora Caraballo Rosario, por entender que es la aplicación correcta de la norma de *Maldonado,* infra.[14]

Expedido el auto y con el beneficio de la comparecencia de todas las partes, procedemos a exponer el marco jurídico aplicable a la controversia ante nuestra atención.

## II.

El Art. 1815 del actual Código Civil de 2020 dispone que la responsabilidad extracontractual "se determina por

---

[12] *Petición de certiorari*, pág. 6.
[13] *Petición de certiorari*, pág. 2.
[14] *Alegato del Recurrido*, págs. 255-270.

la ley vigente en el momento en que ocurrió el acto u omisión que da lugar a dicha responsabilidad".[15] En este caso, la muerte del señor Román Camacho, suceso que dio lugar a la reclamación de autos, aconteció previo a entrar en vigor el Código mediante la Ley Núm. 55-2020.[16] Por lo tanto, no hay controversia en cuanto a la aplicación de los preceptos del anterior Código Civil de 1930 (Código Civil) al caso de marras.[17]

## A. Responsabilidad Civil Extracontractual por Hechos Propios bajo el Art. 1802.

Sabido es que en nuestro ordenamiento jurídico los actos y omisiones en que intervenga cualquier género de culpa o negligencia son fuentes de obligaciones que generan responsabilidad civil extracontractual.[18] Específicamente, respecto a las obligaciones que se derivan de actos culposos o negligentes son de particular aplicación los artículos 1802 y subsiguientes del Código Civil.

Primero, el Art. 1802 preceptúa de forma general que "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado".[19] Para reclamar bajo el Art. 1802 el resarcimiento de daños y perjuicios sufridos, un demandante

---

[15] 31 LPRA sec. 11720.

[16] Cabe destacar que dicha ley entró en vigor el 28 de noviembre de 2020, 30 días a de partir de su publicación.

[17] 31 LPRA sec. 1, *et seq*.

[18] Art. 1042 del Código Civil, 31 LPRA sec. 2992 (derogado).

[19] 31 LPRA sec. 5141.

debe establecer: (1) la existencia de un daño real; (2) el nexo causal entre el daño y la acción u omisión del demandado; y (3) el acto u omisión cual tiene que ser culposo o negligente.[20] Al examinar estos requisitos, hemos establecido que la culpa o negligencia consiste en "la falta del debido cuidado, que a la vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias".[21] Más aun, entre dicho acto culposo o negligente y el daño sufrido debe existir un nexo causal adecuado. Es decir, "no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general".[22]

En el supuesto de que los actos u omisiones culposos de varias personas sean causa adecuada de un daño, todos los cocausantes responden solidariamente al demandante por la totalidad de los daños sufridos por él.[23] En ese contexto, en *Fraguada*, infra, este Tribunal pautó la normativa sobre los efectos de la solidaridad cuando concurren varios cocausantes a la obligación de resarcir un daño. Por su pertinencia, repasemos las doctrinas que subyacen este precedente.

**B. Concurrencia de Pluralidad de Codeudores**

---

[20] *López y otros v. Porrata Doria y otros*, 169 DPR 135, 150 (2006).
[21] *López y otros v. Porrata Doria y otros*, supra, pág. 151.
[22] Íd.
[23] *Szendrey v. Hospicare*, 158 DPR 648, 654 (2003).

Cuando concurre una pluralidad de deudores a una obligación nuestro Código Civil distingue entre las obligaciones mancomunadas y las solidarias. En las obligaciones mancomunadas, cada deudor solamente tendrá que cumplir la parte de la prestación que le corresponda.[24] En cambio, en una obligación solidaria cada acreedor tiene el derecho a reclamarle a cualquiera de los deudores la totalidad de la prestación y cada uno de los deudores está obligado a realizarla íntegramente.[25]

En las obligaciones solidarias existe una relación entre los acreedores y los deudores, llamada la relación externa, y otra relación entre los deudores solidarios, llamada la relación interna. En la relación interna, al pagar uno de los deudores más de la porción que le correspondía, procede realizar una redistribución del gravamen entre todos ellos.[26] Por lo tanto, una vez un deudor solidario paga más de la proporción que le corresponde, este tiene una acción de nivelación o de regreso contra los demás codeudores al amparo del Art. 1098 del Código Civil.[27] Este derecho, también llamado de contribución o de reembolso, "es el que tiene un deudor solidario que ha pagado, para recobrar lo que ha pagado en exceso, en relación con la

---

[24] J. Puig Brutau, *Compendio de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1994, Vol. II, pág. 34.
[25] J. Puig Brutau, *op. cit.*, pág. 36.
[26] J. Puig Brutau, *op. cit.*, pág. 42.
[27] 31 LPRA sec. 3109 (derogado).

responsabilidad de los codeudores entre sí".[28] Esta característica es distintiva de las obligaciones solidarias ya que en las obligaciones mancomunadas, los deudores solo responden hasta la porción que les corresponde. Igualmente distintivo de las obligaciones solidarias es que "[l]a interrupción de la prescripción aprovecha o perjudica por igual a todos los acreedores y deudores".[29]

Como norma general, en nuestro ordenamiento las obligaciones se presumen mancomunadas cuando concurren una pluralidad de deudores. A modo de excepción, una relación solidaria únicamente existe cuando las partes lo pactan expresamente **o cuando la ley así lo establezca**.[30]

**C. Solidaridad en las Obligaciones Extracontractuales**

En cuanto a las obligaciones civiles extracontractuales que surgen de la culpa o la negligencia, nuestro Código Civil no dispone expresamente si ha de regir la solidaridad o la mancomunidad. Nuestro Código Civil ——al igual que el Código Español—— no señala expresamente esta distinción a diferencia de la mayor parte de los Códigos Civiles extranjeros.[31] Ante esa laguna, en *García v. Gobierno de la*

---

[28] C. Irizarry Yunqué, *Responsabilidad Civil Extracontractual*, 7ma ed., Puerto Rico, 2009, pág. 354.

[29] Art. 1874 del Código Civil, 31 LPRA 5304 (derogado).

[30] *Fraguada Bonilla v. Hosp. Aux. Mutuo*, supra, pág. 380.

[31] Para una relación sucinta, véanse, J. Santos Briz, *La Responsabilidad por Hecho de Otro Derivada de Acto Ilícito No Penal*, en Tratado de Responsabilidad Civil (I. Sierra Gil de la Cuesta, cord.) Bosch, T. II, 2008, p. 670; J.J. Álvarez González, *Responsabilidad Civil Extracontractual*, 78 (Núm. 2) Rev. Jur. U.P.R. 457, 478 (2009).

*Capital,*[32] establecimos que **los cocausantes de un daño responden solidariamente ante la persona agraviada al amparo del Art. 1802** cuando dos (2) o más personas causan un daño único e indivisible. Posteriormente nuestra jurisprudencia reiteró y expandió esta normativa.

En *Arroyo v. Hospital La Concepción,*[33] aclaramos que la no presunción de la solidaridad que dispone el Art. 1090 no aplica en materia de responsabilidad civil extracontractual. Más recientemente en *García Pérez v. Corp. Serv. Mujer,*[34] expresamos que la doctrina se inclinaba a reconocer que la solidaridad en el ámbito extracontractual se derivaba de la propia ley.[35] De esta forma, y apoyada por la doctrina prevaleciente en el derecho comparado, nuestra jurisprudencia prácticamente invirtió y estableció la presunción de solidaridad en el ámbito extracontractual. [36] Esta interpretación judicial prevaleció hasta que en *Fraguada,* infra, este Tribunal adoptó parcialmente la doctrina francesa de la solidaridad, cual distingue entre la solidaridad propia (perfecta) y la impropia (imperfecta). Veamos.

---

[32] 72 DPR 138, 148-149 (1951).
[33] 130 DPR 596, 604-605 (1992).
[34] 174 DPR 138 (2008).
[35] *García v. Corp. Serv. Mujer*, supra, pág. 150.
[36] M. Martín-Casals y J. Solé, Multiple Tortfeasors under Spanish Law en: W.V.H. Rogers, Unification of Tort Law: Multiple Tortfeasors, The Hague, Ed. Kluwer Law International, 2004, pág. 189.

En *Fraguada Bonilla v. Hosp. Aux. Mutuo,*[37] la parte demandante no incluyó a un doctor cocausante de su daño en su demanda original sino hasta seis años después. Esto, pues según la normativa jurídica vigente, la presentación de su demanda original contra el hospital interrumpió el término prescriptivo contra los demás cocausantes. Sin embargo, la dejadez y abandono que promueve esa norma nos movió a apartarnos de ella y en vez adoptar la tendencia moderna de la solidaridad impropia. Así, resolvimos que el demandante debió reclamarle individualmente al doctor como alegado cocausante solidario dentro del término prescriptivo de un año dispuesto en el Art. 1868 de nuestro Código Civil, el cual comenzó a transcurrir tan pronto conoció el daño, la identidad del autor y los elementos necesarios para ejercitar su causa de acción.

Bajo la teoría de la solidaridad impropia adoptada en *Fraguada,* supra*,* en el ámbito extracontractual, los efectos principales o primarios de la solidaridad se mantienen: un demandante puede exigir el resarcimiento de la totalidad del daño a cualquiera de los cocausantes del daño, pues estos vienen obligados a responder solidariamente. Sin embargo, **en la solidaridad impropia no aplican las disposiciones del Art. 1874 del Código Civil sobre la interrupción de la prescripción.**[38] Es decir, la persona perjudicada tendrá que

---

[37] Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 DPR 365 (2012).
[38] 31 LPRA sec. 5304 (derogado).

interrumpir el término prescriptivo individualmente respecto a cada cocausante, pues la interrupción de la prescripción en la solidaridad impropia no aprovecha o perjudica por igual a todos los deudores.[39] Sobre la justificación de esta doctrina francesa expresamos lo siguiente:

> Debido a que la solidaridad puede nacer de la ley o de la voluntad de las partes, en Francia se hace una distinción entre los casos de solidaridad perfecta y aquellos en los cuales la solidaridad es imperfecta. La solidaridad es considerada perfecta cuando es "entre varias personas unidas por un interés común, que tienen entre sí relaciones frecuentes o se conocen. En cambio, **es imperfecta cuando es establecida mediante ley entre personas que no se conocen, que no son sino codeudores accidentales o cuando sus relaciones son esporádicas.**
> (........)
> **La exclusión de los efectos secundarios de la solidaridad de varios cocausantes de un daño extracontractual se justifica por la ausencia de una comunidad de intereses entre los coobligados.** (Énfasis suplido).[40]

Esta doctrina francesa también fue adoptada en el ámbito extracontractual por el Tribunal Supremo de España.[41] De igual forma, al aprobar el nuevo Código Civil de 2020, nuestra Asamblea Legislativa codificó en su Art. 1095 los efectos secundarios de la solidaridad impropia entre los cocausantes de un daño, adoptada judicialmente en *Fraguada,* supra.[42]

---

[39] Véase, H.M. Brau, *El término Prescriptivo y su Interrupción en Acciones en Daños por Responsabilidad Extracontractual Solidaria en el Derecho Puertorriqueño*, 44 (Núm. 2) Rev. C. Abo. P.R. 203, 204-205 (1983).

[40] *Fraguada Bonilla v. Hosp. Aux. Mutuo, supra*, págs. 380-381 (Citas omitidas) (Énfasis suplido).

[41] Sentencia del 14 de marzo del 2003 de la Sala Primera de lo Civil.

[42] 31 LPRA sec. 9054.

Siguiendo esta nueva normativa, cual requiere interrumpir los términos prescriptivos de las causas de acción de daños contra cada cocausante de un daño individualmente, en *Maldonado Rivera v. Suárez y otros,*[43] resolvimos las implicaciones de cuando prescribe la acción de daños contra uno de sus cocausantes. Primero, que un presunto cocausante de un daño no puede acumular al pleito a otro presunto cocausante contra quien la causa de acción del demandante prescribió. No obstante, la inacción del demandante le impediría a ese recuperar del cocausante demandado la porción correspondiente al cocausante no-demandado. De forma que habría que descontar la porción de responsabilidad atribuible al cocausante no-demandado, de la indemnización total, en perjuicio del demandante y producto de su incuria.

**D. Responsabilidad Civil Extracontractual por Hechos Ajenos bajo el Art. 1803.**

Aunque la obligación de reparar daños generalmente surge de un hecho propio,[44] de manera excepcional nuestro Código Civil establece varias situaciones en las que ciertas personas están llamadas a responder por hechos ajenos a sí, comúnmente conocido como responsabilidad vicaria.[45] En lo pertinente a esta controversia, el Art. 1803 dispone que

---

[43] 195 DPR 182 (2016).
[44] *Hernández Vélez v. Televicentro*, 168 DPR 803, 814 (2006).
[45] Por ejemplo, el Art. 1803 dispone que los padres son responsables de los perjuicios causados por los hijos menores de edad que viven en su

[l]a obligación que impone [el Art. 1802] *es exigible*, no sólo por los actos u omisiones propios, sino por los de aquellas personas de quienes se debe responder.
(........)
Lo son igualmente **los dueños o directores de un establecimiento o empresa respecto de los perjuicios causados por sus dependientes en el servicio de los ramos en que los tuvieran empleados, o con ocasión de sus funciones.**
(........)
La responsabilidad de que trata esta sección cesará cuando las personas en ella mencionadas prueben que emplearon toda la diligencia de un buen padre de familia para prevenir el daño. (Énfasis suplido).[46]

De esta forma el Código Civil responsabiliza a los patronos por los daños que ocasionen sus empleados en el ejercicio de su trabajo.[47] Sin embargo, el referido artículo permite al patrono liberarse de esta responsabilidad si demuestra que empleó toda la diligencia de un buen padre de familia. **Por lo tanto, el Art. 1803 establece una presunción legal—de que la culpa o negligencia es del patrono por no ejercer la debida diligencia para evitar el daño ocasionado por su empleado, salvo se pruebe lo contrario.**

Así, la culpa que el Art. 1803 presume tradicionalmente consiste en la culpa *in vigilando, in instruendo* o *in eligiendo* del patrono.[48] Es decir, que, de haber sido el

---

compañía; los tutores lo son de los perjuicios causados por los menores o incapacitados que están bajo su autoridad y habitan en su compañía; y los maestros o directores de artes y oficios lo son respecto a los perjuicios causados por sus alumnos o aprendices, mientras permanezcan bajo su custodia. No obstante, en esta ocasión nos limitamos a examinar el llamado de los patronos a responder por sus empleados.

[46] 31 LPRA sec. 5142 (derogado).

[47] Por ejemplo, e*n Roses v. Julia*, 67 DPR 518, 527-28 (1947), bajo la doctrina sentada en *Carrasquillo v. American Missionary Association* (citas omitidas), establecimos la regla de que cuando un hospital se dedica al cuidado de pacientes, con fines pecuniarios, su dueño es responsable de los daños causados a sus pacientes como consecuencia de la negligencia de sus empleados.

[48] *Maderas Tratadas v. Sun Alliance*, 185 DPR 880, 907 (2012).

patrono diligente en vigilar, instruir o escoger a sus empleados, el daño no hubiese ocurrido. Para activar esta presunción de culpa del patrono, un demandante debe establecer *prima facie* (1) una relación de dependencia entre el patrono y el empleado, (2) que el empleado actuó en el desempeño de los ramos de su oficio con el propósito de servir y proteger los intereses del patrono, y que (3) el empleado tuvo culpa en el desempeño de esas funciones.[49] Por lo tanto, en las reclamaciones bajo el Art. 1803 en teoría existen al menos dos responsabilidades independientes: la del empleado, por su culpa *in operando*, bajo el Art. 1802, y la del patrono por su culpa *in eligiendo*, *in instruendo* o *in vigilando,* bajo el Art. 1803.[50]

Al ser autónomos los fundamentos de la responsabilidad del patrono y la de su empleado, el demandante tiene la opción de presentar su reclamación solamente contra el patrono, contra el empleado, o contra ambos.[51] Después de todo, el Código Civil faculta a la persona perjudicada a exigirle el resarcimiento de sus daños no solamente a quien causa el daño (en este caso, un empleado, bajo el Art. 1802),

---

[49] *Hernández Vélez v. Televicentro*, supra. *Parrilla Báez v. Airport Catering Services*, 133 DPR 263 (1993).

[50] C. Zeno Santiago, *La responsabilidad civil extracontractual de los empresarios: Estudio comparado entre España y Puerto Rico*, 1ra ed., Madrid, Ed. Dykinson, 2015, págs. 67-68.

[51] J. Solé Feliu, *La responsabilidad extracontractual del principal por hechos de sus auxiliares: principios y tendencias*, 1ra ed., Madrid, Ed. Reus, 2012, pág. 137.

sino además a las personas llamadas a responder por él (en este caso, un patrono, bajo el Art. 1803).

Aunque a la responsabilidad del patrono que se deriva del Art. 1803 comúnmente se le refiere como responsabilidad vicaria,[52] como mencionamos anteriormente, varios tratadistas expresan que no es propio referirse así a la responsabilidad por hechos ajenos, también conocida como responsabilidad presunta.[53]

El régimen de responsabilidad presunta, como el del Art. 1803, se distingue pues retiene la culpa del principal como fundamento de su responsabilidad. De esta forma, crea una presunción *iuris tantum* de la culpa del patrono. Esta presunción es rebatible mediante prueba de que el patrono empleó toda la diligencia de un buen padre de familia para prevenir el daño.

En cambio, bajo el modelo de responsabilidad vicaria el patrono es llamado a responder de forma absoluta aun cuando demuestre que no ha incurrido en culpa o negligencia propia. Por esto se le refiere como un régimen puro de responsabilidad de hecho ajeno sin necesidad de que el

---

[52] Véase *Núñez v. Cintrón*, 115 DPR 598, 613 (1984) ("En virtud del Art. 1803 del Código Civil, *equivalente a la responsabilidad vicaria*, el incumplimiento de ese deber por el personal del hospital conlleva responsabilidad extracontractual de la institución hospitalaria frente al perjudicado. Roses v. Juliá, 67 D.P.R. 518 (1947).") (Énfasis suplido). No obstante, esta fugaz mención de la equivalencia de estas figuras jurídicas carece de un análisis jurídico que sustente esa conclusión.

[53] C. Moreno de Toro, *La responsabilidad civil del empresario por actos de sus empleados*, 1ra ed., Madrid, Ed. CES, 1999, págs. 108-109. Véase además C. Irizarry Yunqué, *op. cit.*, págs. 363-364.

principal haya sido negligente.[54] Este modelo se desarrolló en el derecho común o consuetudinario, sobre la concepción de que los actos de los auxiliares son, por extensión, los actos del principal. Por lo tanto, es justo que se le imponga responsabilidad al patrono por los actos culposos o negligentes de sus auxiliares.[55] Hoy día, la mayoría de los estados en los Estados Unidos han creado normas jurídicas codificando estos supuestos.[56] Siguiendo esa tendencia, cabe puntualizar que el Art. 1540 del nuevo Código Civil de 2020 (análogo al Art. 1803 del Código anterior) adopta este modelo de responsabilidad vicaria.[57]

No obstante las diferencias entre ambos modelos, la justificación de su existencia es sustancialmente igual. En el derecho civil, además de reconocer la culpa propia del principal, se reconoce que quien recibe los beneficios debe soportar los inconvenientes—concepto recogido en la máxima *cuius commoda eius incommoda*.[58] Mientras, en el derecho consuetudinario el modelo de responsabilidad vicaria se justifica al entender que la empresa es quien tiene la capacidad económica y es quien debe responder por los daños que causan sus agentes.[59]

---

[54] J. Solé Feliu, *op. cit.*, pág. 22.
[55] Restatement (Second) of Agency: When Master is Liable for Torts of His Servants sec. 219 (1958).
[56] C. Zeno Santiago, *op. cit.,* pág. 102.
[57] 31 LPRA sec. 10805.
[58] C. Moreno de Toro, *La responsabilidad civil del empresario por actos de sus empleados*, 1ra ed., Madrid, Ed. CES, 1999, pág. 166.
[59] Restatement (Third) of Torts: Apportionment of Liability sec. 13 (2000).

**E.  El Derecho de Repetición bajo el Art. 1804.**

Ahora bien, el patrono que haya respondido bajo el Art. 1803 por los actos culposos o negligentes de su empleado cuenta con un remedio particular conforme al Código Civil. Así, el Art. 1804 dispone que "[e]l que paga el daño causado por sus dependientes puede repetir de estos lo que hubiese satisfecho".[60] **Es decir, el Código Civil expresamente contempla una causa de acción contingente posterior para recuperar del empleado lo que por culpa de ese respondió.** Dicha acción es análoga a la de nivelación que se le reconoce a los deudores solidarios para recobrar lo que han pagado en exceso a su cuota.[61]

El derecho de nivelación no surge hasta que un codeudor haya efectuado un pago mayor a la proporción que le corresponde.[62] Sin embargo, el codeudor sujeto al pago puede presentar una demanda contra tercero como reclamación contingente.[63] Es decir, presentada la reclamación de la parte demandante contra un deudor solidario, este último puede presentar una reclamación contra los demás codeudores ⸺contingente a que responde ante los demandantes en mayor proporción a su propia culpa.[64] De esta forma, el derecho de

---

[60] 31 LPRA sec. 5143 (derogado).
[61] C. Zeno Santiago, *op. cit.,* pág. 71.
[62] Íd.
[63] Íd.
[64] Por ejemplo, en *Nuñez v. Cintrón*, 115 DPR 598, 620 (1984), este Tribunal le impuso responsabilidad solidaria al hospital y al médico demandado por su negligencia combinada, haciendo la salvedad que "[e]ste dictamen es sin menoscabo de cualquier acción en nivelación que pudieran los demandados deducir entre sí una vez satisfecha la sentencia."

nivelación busca evitar el enriquecimiento injusto, pues resultaría injusto que "siendo dos (2) o más personas las causantes de un daño se le permita al demandante, por razón de parentesco, amistad, colusión, o por cualquier motivo, que releve a éstas de responsabilidad y dirija la acción exclusivamente contra otros".[65]

En cuanto al término prescriptivo aplicable a esta acción de repetición, la doctrina se inclina a reconocer que debe estar sujeto al término general de acciones personales.[66] Y es que esta acción no reclama el cumplimiento de una obligación que surge de un acto u omisión en que interviene culpa o negligencia. Por lo tanto, no le es de aplicación el término prescriptivo dispuesto para las obligaciones extracontractuales.[67] Así, el término prescriptivo aplicable de acciones personales dependerá de la ley vigente al momento en que surge el derecho de repetición. Es decir, bajo el Art. 1864 del Código Civil anterior, prescribirán con el transcurso del plazo de quince (15) años desde que se efectúa el pago en mayor proporción a la culpa propia. Mientras, bajo el nuevo Código Civil de 2020 el plazo de prescripción general para el reclamo de acciones personales es de cuatro (4) años.[68]

---

[65] *Szendrey v. Hospicare*, supra, pág. 654.
[66] 31 LPRA sec. 5294 (derogado).
[67] C. Zeno Santiago, *op. cit.*, pág. 74.
[68] Art. 1203 del Código Civil de 2020, 31 LPRA 9495.

**F. La Solidaridad dentro del régimen de Responsabilidad Civil Extracontractual por Hechos Ajenos bajo el Art. 1803.**

Nuestro Código Civil no dispone expresamente si aquellos llamados a responder por hechos ajenos bajo el Art. 1803 guardan una relación de solidaridad con aquellos por quienes han de responder. Por lo tanto, y en lo aquí pertinente, de nuestro ordenamiento jurídico no surge con claridad si un patrono y un empleado son, en virtud de su relación contractual preexistente, solidariamente responsables frente a un tercero bajo el Art. 1803, de la misma manera que lo serían dos cocausantes independientes bajo el Art. 1802. Esta es precisamente la controversia novel que hoy atendemos. Más no somos la primera jurisdicción en abundar este debate jurídico.

Varios tribunales estatales y federales se han enfrentado a esta controversia. Aun en jurisdicciones donde las legislaturas han eliminado o modificado la responsabilidad solidaria (*joint and several liability*) en el ámbito extracontractual sin expresar el impacto que esto tendría en la responsabilidad vicaria de un patrono por los actos de sus empleados,[69] los tribunales han tendido a concluir que existe solidaridad entre un patrono y su empleado. Esto pues no se trata de cocausantes que actúan

---

[69] Íd.

independientemente sino de una responsabilidad impuesta al principal a base de la relación que tiene con el causante del daño.[70] El *Restatement of Torts* lo expresa claramente cuando resume la norma de responsabilidad vicaria de la manera siguiente:

> **"A person whose liability is imputed based on the tortious acts of another is liable for the entire share of comparative responsibility assigned to the other,** regardless of whether joint and several liability or several liability is the governing rule for independent tortfeasors who cause an indivisible injury."* (Énfasis suplido).[71]

Al aprobar el nuevo Código Civil de 2020 nuestra Asamblea Legislativa expresamente adoptó el modelo de responsabilidad vicaria concebido por el derecho común.[72] De esta forma, la situación jurídica actual en Puerto Rico se encuentra igualmente apta para favorecer la solidaridad dentro de su responsabilidad vicaria. Mientras, aclaramos el lugar de la solidaridad dentro del régimen de responsabilidad presunta por hechos ajenos bajo el Art. 1803. En todo caso, debemos seguir remando en la corriente de la modernidad jurídica.

---

[70] Íd. Véase además The Nonparty Tortfeasor, 23 Mem. St. U. L. Rev. 105, 107 (1992). *Rashtian v. BRAC-BH, Inc.,* 12 Cal.Rptr.2d 411 (Ct.App. 1992); *Sieben v. Sieben*, 646 P.2d 1036 (Kan. 1982); *Clark v. Associates Commercial Corp.*, 149 F.R.D. 629, 634 (D.Kan. 1993); *Kragel v. Wal-Mart Stores, Inc.*, 537 N.W.2d 699 (Iowa 1995).

[71] Restatement (Third) of Torts: Apportionment Liab. § 13 (2000).

[72] Artículo 1541, 31 LPRA sec. 10805.

III.

**Del análisis que antecede resulta evidente que la doctrina de solidaridad, en su vertiente** <u>impropia</u> **según adoptada en** *Fraguada***, supra, es inaplicable al régimen de responsabilidad presunta de los patronos por los actos de sus empleados bajo el Art. 1803.** Por consiguiente, no procede aplicar su corolario de *Maldonado*, supra, según pretende el foro apelativo, para reducir la indemnización imputada a LMC por la porción correspondiente a la doctora Caraballo Rosario.

El régimen de responsabilidad presunta por hechos ajenos se fundamenta en la existencia de una relación de dependencia previa entre el patrono y su empleado donde el empleado, en el desempeño de su oficio, actúa para adelantar los intereses de su patrono. Es decir, ambos cocausantes están inexorablemente atados por un interés común y tienen entre sí relaciones frecuentes. No existe, por lo tanto, la ausencia de comunidad de intereses que justificó la adopción de la doctrina de solidaridad impropia en el ámbito extracontractual en *Fraguada*, supra, bajo el Art. 1802. Por el contrario, **al interpretar conjuntamente los Arts. 1803 y 1804 del Código Civil, la conclusión más lógica es que la responsabilidad que surja entre el patrono y el empleado es una solidaria, más en su vertiente** <u>propia</u>. Veamos.

Primero, es forzoso concluir que los Arts. 1803 y 1804 del Código Civil necesariamente implican los efectos primarios de la solidaridad. Esto, pues la persona perjudicada puede exigir el resarcimiento de los daños tanto al patrono, bajo el Art. 1803, como al empleado, bajo el Art. 1802, o a ambos. En particular, a pesar de que el Art. 1803 fundamenta la obligación de responder del patrono sobre su presunta culpa, el Código Civil a su vez no limita la porción que se le puede exigir a este. Por el contrario, el Art. 1803 llama al patrono a responder por la totalidad de los daños ocasionados por su empleado y así contempla la posibilidad del patrono repetir contra ese la cantidad que hubiese satisfecho al perjudicado. Este derecho de repetición necesariamente implica la existencia de una relación interna que únicamente existe en las obligaciones solidarias. De lo contrario, una persona perjudicada que decida ejercer su acción únicamente contra el patrono solo podrá recibir una indemnización parcial, correspondiente a la porción de culpa del patrono. Es decir, el patrono solamente respondería en proporción a su propia culpa y de ninguna forma estaría respondiendo por los actos de su empleado. No obstante, esta conclusión daría al traste con el texto claramente establecido en el Art. 1803. Peor aún, cuando consideramos las disposiciones del Art. 1804, el derecho de repetición con el que cuenta el patrono no serviría fin alguno si bajo el Art. 1803 el patrono nunca pagaría en exceso a la porción correspondiente a su propia

culpa. No cabe duda, entonces, que el Art. 1803 del Código Civil instituye, lógicamente, una relación solidaria entre un patrono y sus empleados.

**Segundo,** es menester recordar que el Código Civil solamente clasifica las obligaciones como mancomunadas o solidarias de forma que la categorización de la solidaridad como propia o impropia responde al llamado jurisprudencial de llenar las lagunas jurídicas. En esta ocasión, **al resolver que los Arts. 1803 y 1804 del Código Civil establecen una relación solidaria entre un patrono y su empleado, dicha norma de solidaridad en realidad es una impuesta por ley. Por consiguiente, también rigen los efectos secundarios de la solidaridad propia codificados en el Art. 1091,** *supra*. **Es decir,** "[l]a interrupción de la prescripción aprovecha o perjudica por igual a todos los acreedores y deudores".[73] En lo pertinente a nuestra controversia, **los actos interruptivos del término prescriptivo realizados contra el patrono o el empleado perjudican al otro por igual.**

Cónsono con lo anterior, cabe acentuar que la Corte Federal para el Distrito de Puerto Rico ha concluido, en varias ocasiones, que nuestra decisión en *Fraguada*, supra, respecto a la solidaridad impropia, no se extiende al

---

[73] Art. 1874 del Código Civil, 31 LPRA 5304 (derogado).

régimen de responsabilidad presunta establecido en los Arts. 1803 y 1804 del Código Civil.[74]

De acuerdo a lo relatado, los peticionarios demandaron a LMC reclamando el resarcimiento de los daños causados por los actos negligentes de su empleada, la doctora Caraballo Rosario. Así, el término prescriptivo contra LMC comenzó a transcurrir luego de la muerte del señor Román Camacho el 26 de noviembre de 2012. Conforme a esto, los peticionarios oportunamente presentaron su demanda contra LMC el 5 de noviembre de 2013, es decir, dentro del término prescriptivo de un año establecido en el Código Civil. **Al estar presentes los elementos de la solidaridad propia en la relación obrero-patronal preexistente entre LMC y la doctora Caraballo Rosario** ——dentro de la cual como empleada la galena causó un daño a un tercero en el desempeño de su oficio[75] ——**los peticionarios estaban facultados para dirigir su acción individualmente contra cualquiera de los solidariamente obligados o ambos ——es decir, contra la doctora Caraballo Rosario, contra LMC, o ambos.** De esta forma, la presentación de la demanda contra LMC a su vez interrumpió el término prescriptivo contra la doctora Caraballo Rosario.

---

[74] Véanse *Ramírez Ortiz v. Corporación del Centro Cardiovascular de Puerto Rico y del Caribe*, 994 F.Supp.2d 218 (D.P.R. 2014); *Kenyon v. González del Río*, 115 F.Supp.3d 268 (D.P.R. 2015).

[75] Según lo concluyó el Tribunal de Primera Instancia y no vemos razón para pasar juicio sobre esta determinación.

Ulteriormente, LMC presentó una reclamación contingente contra la doctora Caraballo Rosario como codeudora solidaria. Aplicando nuestros pronunciamientos sobre la solidaridad impropia en *Maldonado,* supra*,* el foro de instancia erróneamente desestimó esta demanda contra tercero por entender que la acción que tenían los peticionarios contra la doctora Caraballo Rosario había prescrito. Claro, esto en ausencia de una expresión previa del Tribunal Supremo clarificando que la responsabilidad solidaria entre un patrono y su empleado es propia. Esta aplicación errónea de la doctrina de solidaridad impropia privó a LMC de su claro derecho estatutario de repetición del Art. 1804 del Código Civil, cual pudiera tener el efecto de permitir un enriquecimiento injusto a favor de la doctora Caraballo Rosario y que no hay duda tendría un efecto perjudicial sobre LMC. No obstante, el derecho de LMC de repetir contra la doctora Caraballo-Rosario bajo el Art. 1804 surgiría a partir del momento en que LMC pague la indemnización imputada bajo el Art. 1803. Anterior a eso, y en aras de fomentar la economía procesal, solo procedería una acción de nivelación **contingente**.

Igualmente errada resulta la determinación del foro apelativo de ordenar reducir el monto que tendría que pagar LMC a los peticionarios. Esto, pues, en la relación externa cada deudor solidario responde por la totalidad de la deuda, y en este caso, el patrono por su empleado, según dispone

el Art. 1803. La proporción en que cada cocausante solidario contribuyó a los daños es solamente relevante en la relación interna entre los cocausantes para propósitos de nivelación o repetición posterior y, por tanto, es irrelevante para los peticionarios hacer valer su derecho estatutario a cobrar de un patrono la totalidad del daño ocasionado por su empleado. Por lo tanto, en la presente acción, resulta improcedente celebrar una vista para determinar la porción de los daños atribuibles a la doctora Caraballo Rosario para que estos sean descontados de la indemnización impuesta a LMC. Por el contrario, tal determinación cobraría importancia únicamente para determinar la cuantía por la que LMC podría repetir contra la doctora Caraballo Rosario. No obstante, no es hasta que LMC responda por la totalidad de los daños que entonces podrá repetir contra la doctora Caraballo Rosario por la cantidad que pagó en exceso a su propia culpa, según le faculta el Art. 1804. Al surgir durante la vigencia del actual Código Civil de 2020, la acción de repetición estaría sujeta al término prescriptivo de cuatro (4) años contemplado en el Art. 1203. No es hasta tal procedimiento que los tribunales deberán determinar la porción de daños atribuible a cada cocausante, claro está, si el patrono ejerce esta acción de repetir posteriormente.

**IV.**

Por los fundamentos antes expuestos, procede revocar la determinación del Tribunal de Apelaciones en cuanto ordena

una vista a los fines de determinar la porción de culpa correspondiente a la Dra. Santos L. Caraballo Rosario ya que no procede descontar esa porción de la totalidad de la compensación. Consecuentemente se confirma la sentencia del Tribunal de Primera Instancia ordenando a la recurrida el pago de la totalidad de los daños.

Se dictará sentencia de conformidad.


Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Yadira Pérez Hernández, Melissa Román Pérez; Suehaze Román Pérez; Robert E. Román Pérez **Peticionarios** v. Lares Medical Center, Inc.; Dra. Fulana de Tal; Aseguradora A, B, C; Hospital John Doe **Recurridos** | CC-2018-0438 | *Certiorari* |

**SENTENCIA**

En San Juan, Puerto Rico, a 11 de agosto de 2021.

Por los fundamentos expuestos en la Opinión que antecede, la que se hace formar parte íntegra de la presente Sentencia, se revoca la determinación del Tribunal de Apelaciones en cuanto ordena una vista a los fines de determinar la porción de culpa correspondiente a la Dra. Santos L. Caraballo Rosario ya que no procede descontar esa porción de la totalidad de la compensación. Consecuentemente se confirma la sentencia del Tribunal de Primera Instancia ordenando a la recurrida el pago de la totalidad de los daños.

Notifíquese de inmediato.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. La Jueza Asociada señora Pabón Charneco hace constar la expresión siguiente:

"A casi una década de resuelto *Fraguada Bonilla u. Hosp. Aux.* Mutuo, 186 DPR 365 (2012), aún continuamos patinando sobre el camino turbio trazado por la Mayoría al adoptar parcialmente la doctrina de obligaciones *in solidum.* En aquel caso se concretó un acuerdo transaccional entre la parte demandante y el Hospital demandado, mediante el cual se convino el desistimiento y relevo de la reclamación contra el Hospital. La acción continuó contra los médicos codemandados. Ese tracto conllevó a que se discutiera el efecto interruptor que tenía la presentación de una reclamación al amparo del **Art. 1802** del Código Civil, 31 LPRA ant. sec. 5141, sobre el término prescriptivo que corría

a beneficio de los cocausantes que no fueron demandados dentro del plazo de un (1) año. Empero, no se consideró las implicaciones que tenía lo establecido en el **Art. 1803** del Código Civil, 31 LPRA ant. sec. 5142, sobre la interrupción de la prescripción.

Reitero que estoy en desacuerdo con que en *Fraguada Bonilla v. Hosp. Aux. Mutuo,* supra, la solidaridad extracontractual de los cocausantes de un daño se hubiera bifurcado en propia (perfecta) e impropia (imperfecta). Sin embargo, estoy conforme con la Opinión emitida hoy por el Tribunal pues, a pesar de que su razonamiento se amolda al precedente sentado en el precitado caso, el resultado alcanzado es el correcto. La Demanda presentada contra un patrono por los actos dañosos cometidos por su empleado en el ejercicio de funciones laborales también interrumpe el término prescriptivo para reclamar contra el empleado".

El Juez Asociado señor Estrella Martínez emite la siguiente expresión de conformidad:

"Estoy conforme con la determinación de este Tribunal por entender que ésta complementa de forma armoniosa el estado de derecho que instauramos en Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 DPR 365 (2012). Mediante el dictamen precitado, tomamos el camino de la modernidad y el ejercicio responsable del derecho en los asuntos prescriptivos de responsabilidad extracontractual. Hoy, este Tribunal cumple similar cometido con respecto a un ámbito jurídico distinto, a saber: la responsabilidad de un patrono por los actos de sus empleados, en el que median importantes consideraciones de política pública y que es regulado separadamente en nuestro Código Civil".

Bettina Zeno González
Secretaria del Tribunal Supremo Interina